Edgar LUQUIS, Appellant,

v.

The STATE of Texas.

No. 0283–00.

Court of Criminal Appeals of Texas.

April 10, 2002.

---

Brian Wice, Houston, Debbie S. Holmes, Staff Atty., Huntsville, for Appellant.

Mark Mullin, Special Prosecution Unit, Huntsville, Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court., joined by KELLER, P.J., MEYERS, KEASLER, HERVEY, and HOLCOMB, JJ.

Appellant challenges the trial court's submission of the statutorily-required parole law instruction at the punishment stage. Appellant argues that, because he is not eligible for release on mandatory supervision, the trial judge erred in giving the jury the instruction concerning "good conduct time." Moreover, because this portion of the charge does not apply to him, appellant contends that informing the jury about "good conduct time" violated his due process rights. Finally, he asks what harm analysis applies—the standard set out in *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1984), or Rule 44.2(a) of the Texas Rules of Appellate Procedure concerning constitutional error—in the event giving the instruction on "good conduct time" is erroneous or unconstitutional. We conclude that the parole law charge is not unconstitutional as applied to him, and thus it was not error for the trial court to include this legislatively-mandated instruction in its punishment charge.[1] Therefore, we affirm the decision of the

1. We granted review on the following five grounds:

 (1) Is it error to instruct the jury on the effect of good-conduct time on the amount of time that will be served in prison, as required by article 37.07, section 4(a), Code of Criminal Procedure, when appellant is not eligible to have good-conduct time counted toward his parole eligibility date or release date?

 (2) Is article 37.07, section 4(a), Code of Criminal Procedure, unconstitutional under the *due course of law provisions of the Texas Constitution* as applied to appellant, in that it requires instructions on good-conduct time that could be misleading to the jury in a case in which good-conduct time does not affect parole eligibility or release date?

 (3) Is article 37.07, section 4(a), Code of Criminal Procedure, unconstitutional under the *due process clause of the Fourteenth Amendment to the U.S. Constitution* as applied to appellant, in that it requires instructions on good-conduct time that could be misleading to the jury in a case in which good conduct time does not affect parole eligibility or release date?

 (4) What is the "law applicable to the case" that is required to be in the jury charge by article 36.14, Code of Criminal Procedure: does article 37.07, section 4(a) make good-conduct time and parole part of the law applicable to the case?

 (5) If it is error to charge the jury as required by article 37.07, section 4(a), Code of Criminal Procedure, in a case where good-conduct time does not count toward parole eligibility or release date, what harm analysis applies?

Ninth Court of Appeals, which had rejected these same contentions. *Luquis v. State,* 997 S.W.2d 442 (Tex.App.-Beaumont 1999).

### I.

Appellant was convicted of murdering a fellow prison inmate by repeatedly stabbing him with a steel rod or "shank." Appellant described the murder in his written confession:

I'm guilty. I stabbed the man. I was in the 7 AB dayroom around 3:00 or 4:00 p.m. with Xavier Guerrero. We were just talking about home and the world. Pablo Nunez came in and started talking s* * * to me. There was about 15 people in the dayroom looking at me like, Are you going to let him talk to you that way? He had been messing with me for about two weeks. I went to my house which is 7–AB 35 cell and got two shanks. One was a big one and one was a small one. The big one was crooked on one end and the other one was made out of part of a bucket. I gave Xavier the big shank and asked him to help me. Pablo was in the dayroom and did not know we had the shanks. I told Pablo, Let's take care of business. He wanted to go to the second row shower, but the picket boss could see us. We went to 3 Row to the shower and Xavier was following me. Pablo told Xavier to stay out of it and go downstairs. I started swinging and stabbed him in the side. I

tried to stab him in the leg, but I had all that hate inside me and I just went crazy. He got away and ran downstairs to the door to get out, and I grabbed him and started stabbing him. Xavier was stabbing him, also. I looked over and the boss told me or motioned for me to get on the floor. We both dropped our shanks and got on the floor. If the door had been open, it would have turned out different than it did.

The medical examiner testified that the victim died of multiple stab wounds, four of which punctured his left lung. Several prison guards testified that they viewed, through the plexiglass dayroom door, much of the stabbing, which occurred just four to five feet from them. However, they could not enter the locked dayroom, or let the wounded inmate out, until security back-up arrived. By that time the victim was dead, and appellant, smiling at the officers, threw the shank away and finally obeyed the commands to lie down.

At the punishment phase, the State offered evidence of appellant's four prior burglary of a habitation convictions, for which he had been sentenced to thirty years imprisonment. The defense called no witnesses at either stage of the trial.

During the punishment charge conference, appellant's counsel objected to the inclusion of the statutorily-required parole law instruction,[2] and submitted a proposed

---

**2.** That instruction is set out in Tex.Code Crim. Proc. art. 37.07, § 4(a):

Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or

part of any good conduct time earned by the prisoner.

It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant

alternative instruction.[3] The trial judge rejected appellant's proposed instruction and gave the statutorily-required parole instruction.

Appellant referenced the parole charge during punishment closing arguments, stating:

> The parole instruction in the jury charge says the person doesn't become eligible for parole until they've served half, 50 percent, or 30 years, whichever is less. 30 years is a long, long time in anybody's life. I'm asking for you to show mercy because you can because he has a 30-year sentence already and any sentence you give him today, he will not

begin to serve until his 30-year sentence ceases to operate.

The State, in return, requested a life sentence and obliquely referred to the parole charge by saying: "I'm not asking you to give Edgar Luquis 30 years. That was in response to the part of the charge that says he'll have to serve half or thirty years, whichever is less." The jury returned a life sentence after deliberating slightly more than one hour.

The Beaumont Court of Appeals rejected appellant's claims that: 1) the trial court erred in giving the statutorily required parole instruction because it included language concerning good conduct time,

is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

3. Appellant's proposed instruction was:

Under the law applicable in this case, it is possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

"Parole" means the discretionary and conditional release of an eligible inmate sentenced to the institutional division so that the inmate may serve the remainder of the inmate's sentence under the supervision of the pardons and paroles division. Parole is not a commutation of sentence of any other form of clemency. A parole panel may release an eligible inmate on parole if the panel determines that the inmate's release will not increase the likelihood of harm to the public.

Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole *until the actual time served plus any good time earned equals one-fourth of the sentence imposed.* Eligibility for parole does not guarantee that parole will be granted.

It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

You may consider the existence of the parole law and good conduct time. However, you are *not* to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

The instruction that appellant requested: 1) added a paragraph defining and elaborating upon the concept of parole which is not found in article 37.07; and 2) was inaccurate because it instructed the jury that appellant would be eligible for release on parole when his good conduct time plus his actual time equaled one-fourth of his sentence. That particular parole instruction applies *only* to second and third degree felonies in which there is no deadly weapon finding. Appellant was convicted of murder, a first degree felony, for which he is required to serve one-half of his actual sentence (or thirty years) without regard for any good conduct time.

although good conduct time would not count toward appellant's parole eligibility date; and 2) the trial court erred in denying appellant's request that the jury charge include a definition and description of parole. *Luquis*, 997 S.W.2d at 444. We granted appellant's five grounds for review.

## II.

The statutory parole charge instructs a jury in very general terms about the existence and possible grant of parole. It explicitly informs the jury that persons such as appellant are ineligible for release on parole until they have served one-half of their sentence or thirty years, whichever is less. The instruction also refers to the concept of "good conduct time" and states that a person sentenced to prison might earn some reduction in his period of incarceration (though not a reduction of his *sentence* ) through the discretionary

award of good conduct time.[4] The final two paragraphs of the instruction clearly warn the jury that neither they, nor anyone else, can accurately predict how the concepts of "good conduct time" or parole might be applied to any particular person and thus they may not consider how those concepts might apply to the defendant. Thus, the over-all purpose of the instruction is to inform jurors of these concepts as a general proposition, but to prohibit the jury from using its notions of parole or "good conduct time" in any calculus in assessing the appropriate punishment.

Historically, Texas courts held that it would violate the separation of powers clause for a jury to consider when the Board of Pardons and Paroles might release an inmate on parole because it would constitute a judicial encroachment upon an executive function.[5] Nonetheless, in 1985, the Legislature added Section 4 to Article

---

**4.** The award of "good conduct time" serves an important purpose in a penological system. It encourages good behavior, rehabilitation efforts, self-improvement and self-discipline. All of these awards are discretionary and all such awards may be forfeited. For a Texas prisoner, "trusty" status (which determines the level of "good conduct time" credits) may result in a better work assignment, access to more personal privileges, residence in a less restrictive environment, and may possibly reduce the ultimate amount of time spent in prison. *See* TEX. GOV'T CODE § 498.003(b) & (d) (Vernon Supp.2002) ("Accrual of Good Conduct Time"). As to this last benefit, the accumulation of "good conduct time" operates in two distinct ways: 1) inmates convicted of lesser felonies are eligible for parole once their actual time in prison plus non-forfeited "good conduct time" equals one-fourth of their sentence or a statutorily set number of years; 2) under the Texas mandatory supervision law, eligible inmates whose actual time in prison plus non-forfeited "good conduct time" equals their full sentence may be released from prison as if they had been paroled. The accumulation of "good conduct time" may also have a prac-

tical, non-binding effect upon the time an inmate serves in prison: once eligible for parole, an inmate who has accumulated significant "good conduct time" may be more likely to be released on parole than other similarly situated inmates. *See* TEX. GOV'T CODE § 508.144 (mandating development of parole guidelines); 37 TAC § 145.2 (2002) (setting out parole guidelines, including "institutional adjustment" and "information in support of parole" as two of seven criteria to be considered). Thus, while appellant's "good conduct time" does not affect his parole eligibility date, it certainly may result in a shorter time of imprisonment once he is otherwise eligible for parole.

**5.** TEX. CONST. ART. II, § 1. In *Sanders v. State*, 580 S.W.2d 349, 351 (Tex.Crim.App.1978), for example, this Court stated:

it would be improper for punishment to be based on an expectation that clemency powers would be exercised, and it would be unconstitutional to attempt to delay exercise of the clemency powers or to avoid the possible granting of parole by increasing punishment in anticipation thereof.

37.07,[6] which required trial courts to instruct juries in non-capital felony trials about the law of parole generally. Two years later, this Court declared that legislative enactment unconstitutional because it violated the separation of powers and due course of law doctrines.[7]

In 1989, presumably in reaction to this Court's decision in *Rose v. State*, Texas citizens voted to amend Article IV, Section 11(a) of the Texas Constitution to provide:

The Legislature shall by the law establish a Board of Pardons and Paroles and shall require it to keep record of its actions and the reasons for its actions. The Legislature shall have authority to enact parole laws *and laws that require or permit courts to inform juries about*

*the effect of good conduct time and eligibility for parole or mandatory supervision on the period of incarceration served by a defendant convicted of a criminal offense.*[8]

This amendment explicitly authorized the Texas Legislature to enact statutory language to fulfill its mandate,[9] and the Legislature re-enacted article 37.07, section 4(a) in 1989. This Court determined that the re-enacted statute did not violate a defendant's due course of law rights under the Texas Constitution,[10] while in other cases, this Court determined that article 37.07, section 4(a)'s parole instruction did not violate the federal constitution's due process clause.[11]

**6.** *See* Acts 1985, 69th Leg., ch. 576, §§ 1, p. 2195.

**7.** *Rose v. State,* 752 S.W.2d 529, 535 (Tex. Crim.App.1987) (declaring § 4(a) of article 37.07 unconstitutional, on the basis, inter alia, that it violated separation of powers clause).

**8.** *See* Tex. S.J. Res. 4, 71st Leg., 1989 Tex. Gen. Laws 6414, and Act of May 17, 1989, Ch. 103, § 1, 1989 Tex. Sess. Law. Serv. 442 (Vernon) (emphasis added to 1989 amendment additions).

**9.** *See Oakley v. State,* 830 S.W.2d 107, 109 (Tex.Crim.App.1992) (stating that "[t]his amendment clearly authorized the Legislature to enact laws that permit or require courts to inform juries about the effect and operation of parole laws. In fact, in 1989 the Bill Analysis for Senate Joint Resolution No. 4, the precursor to the amendment in Article IV, Section 11(a), stated that the purpose for the amendment was to 'establish a constitutional basis for any legislative efforts to provide courts with a jury charge regarding good conduct time and parole.' Thus, when the Legislature re-enacted Article 37.07, Section 4, in 1989, it did so pursuant to express constitutional authority").

**10.** *Oakley,* 830 S.W.2d at 111–12. The only significant difference between the 1989 and the current versions of the pertinent parole

law charge is that the phrase "he will not become eligible for parole until the actual time served equals *one-fourth* of the sentence imposed or *15* years, whichever is less" has been modified to "he will not become eligible for parole until the actual time served equals *one-half* of the sentence imposed or *30* years, whichever is less." *Compare* Tex.Code Crim. Proc. art. 37.07, § 4(a) (Vernon 1990) *with* Tex.Code Crim. Proc. art. 37.07, § 4(a) (Vernon Supp.2001).

**11.** *See Muhammad v. State,* 830 S.W.2d 953, 956 (Tex.Crim.App.1992) (parole instruction gives jury accurate information on the law applicable to the case and correctly tells the jury not to speculate on what parole authorities will do, thus, "we hold that the parole instruction mandated in Article 37.07, Section 4(a), does not violate federal due process"); *Marks v. State,* 830 S.W.2d 113, 114 (Tex. Crim.App.1992); *French v. State,* 830 S.W.2d 607, 608 (Tex.Crim.App.1992); *Bruno v. State,* 845 S.W.2d 910, 913 (Tex.Crim.App. 1993); *see also Madison v. State,* 825 S.W.2d 202, 207 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (holding that parole law instruction is constitutional; "[a]rticle 37.07 requires the court to inform the jury of the effect of good conduct time and parole and instructs them not to consider how those laws would be applied to the case under consideration. The general instruction that the jury may consider good time and parole merely acknowledges

When the Legislature first enacted article 37.07, section 4(a) in 1985, the parole law and "good conduct time" instruction was both legally accurate and applicable to inmates such as appellant.[12] At that time, all non-capital felony convicts, except those whose convictions contained a deadly weapon finding, were eligible for release on mandatory supervision.[13]

In 1987, however, even before it re-enacted the parole law instruction, the Texas Legislature revised the mandatory supervision law [14] to make release on mandatory supervision unavailable to offenders who, like appellant, have been convicted of murder or other designated first or second degree felonies.[15] Thus, appellant is not eligible for release on mandatory supervision, regardless of how much good time he might accrue, nor does his "good conduct time" make him eligible for parole any sooner than he would be without "good conduct time" credits. His parole eligibility is set at the lesser of one-half of his actual sentence or thirty years. Period. The Legislature has not, in the past fourteen years, amended article 37.07, section 4(a) to reflect these changes in the mandatory supervision law. Thus, the portions of the parole law instruction discussing "good conduct time" now only marginally apply to one in appellant's position.[16]

III.

Appellant's core complaint is that the parole law instruction language concerning "good conduct time" is misleading and erroneous as applied to him and to those similarly situated because he is not, in fact, eligible for release on mandatory supervision. Appellant does not explain *how* a jury will be misled by this instruction or what it might do as a consequence. We assume that the danger appellant fears is that a jury might increase his sentence to compensate for what it could perceive as the possibility that he might otherwise be released from prison too soon due to "good conduct time."

To those who are familiar with the Texas mandatory supervision law and its potential to lesson the actual amount of time an inmate spends in prison, this language *is* somewhat misleading. The jury, however, is told nothing about the existence of the mandatory supervision law or how that law might reduce the actual prison time of any prisoner. To those closely conversant with the Texas parole system, the term "good conduct time" conjures up not mere visions of an institutional reward system— the carrot for good conduct—but its mathematical connection to possible release on mandatory supervision for those who are eligible. There is, however, no evidence or

---

that the jury was informed of the existence and operation of these laws").

**12.** *See* Acts 1985, 69th Leg., ch. 576, § 1, 1985 Tex. Gen. Laws 2195.

**13.** *See* Tex.Code Crim. Proc. art. 42.18, § 8(c) (Vernon 1985) (repealed) (all felony inmates, except those under sentence of death or whose judgment contains a deadly weapon finding, are eligible for release on mandatory supervision).

**14.** *See* Act of June 17, 1987, 70th Leg., R.S., ch. 384, § 6, 1987 Tex. Gen. Laws 1887, 1890.

**15.** *See* Tex.Code Crim. Proc. art. 42.18, § 8(c) (Vernon Supp.1985) (repealed) (now codified at Tex. Gov't Code § 508.149(a)). Under the 1987 amendments and current law:

A prisoner may not be released to mandatory supervision if the prisoner is serving a sentence for an offense and the judgment for the offense contains an affirmative finding under Subdivision (2), Subsection (a), Section 3g, Article 42.12, of this code or if the prisoner is serving a sentence for:
(1) a first degree felony under Section 19.02, Penal Code (Murder);
. . .

**16.** *But see* note 4 *supra*.

even a plausible argument that this jury connected "good conduct time" with release on mandatory supervision, a legal concept about which the jury was told nothing.

### A. The Trial Court Did Not Err in Giving the Jury a Statutorily–Required Jury Instruction.

■ Appellant's first ground for review contends that the trial judge in this case committed error because he included the legislatively-mandated words contained in article 37.07, section 4(a) in the punishment charge.

The Texas Legislature enacted legislation that *requires* the trial judge to instruct the jury in the precise wording that the statute recites. Article 37.07, section 4(a) sets out, verbatim, the words that the trial judge is to use. There are even quotation marks around the wording of the instruction. That is at least some indication that the Legislature did not want any creative deviations from its chosen language. The Legislature prefaced its instruction language with directions that

"the court *shall* charge the jury in writing as follows: ..." The use of the word "shall" generally indicates a mandatory duty.[17] There is no reason to think that the Legislature enacted merely a suggested parole law jury instruction, one that trial judges should cut and paste as they see fit.

■ Trial judges, then, are faced with a dilemma. If they do not give the statutorily mandated instruction, they violate the Legislature's law.[18] If they do give the instruction, defendants such as appellant and those similarly situated may claim that portions of the instruction might be misleading and inapplicable to them. Trial judges may occasionally doubt the wisdom of a particular law, but they are not free to ignore explicit legislative directions unless those directives are clearly unconstitutional.[19] Therefore, because the trial judge in this case instructed the jury according to the legislative dictate expressed in article 37.07, section 4(a), he did not commit error.[20] Therefore, we overrule appellant's first point of error.

---

17. *See Waythe v. State*, 533 S.W.2d 802, 804 (Tex.Crim.App.1976) (stating that the term "shall" is usually mandatory when used in statutes, unless legislative intent suggests otherwise); *Brinkley v. State*, 167 Tex.Crim. 472, 320 S.W.2d 855, 856 (1958) (" 'Must' and 'shall' are synonymous and are usually mandatory when used in statutes"); *Sodipo v. State*, 815 S.W.2d 551, 554 (Tex.Crim.App. 1990) (citing *Brinkley* for the proposition that "must" and "shall" generally mean a mandatory statute; "[a]lthough the term 'shall' may sometimes be construed to be permissive or directory, we understand the rule to be that 'shall' should be given the meaning that best expresses the legislative intent").

18. Trial judges are required to deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX.CODE CRIM. PROC. art. 36.14. Article 37.07, § 4(a) is a legislatively-mandated statement of the law

applicable to the punishment phase of the trial.

19. Justice Roberts put the issue most eloquently over 140 years ago:

> To follow the dictates of justice, when in harmony with the law, must be a pleasure; but to follow the rules of law, in their true spirit, to whatever consequences they may lead, is a duty.

*Duncan v. Magette*, 25 Tex. 245, 1860 WL 5824 *7 (1860) (op. on reh'g); *see, e.g., Griswold v. Connecticut*, 381 U.S. 479, 527, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (Stewart, J., dissenting) (noting that while judges may find a legislative enactment is an "uncommonly silly law," one that is "unwise, or even asinine[,]" their function is solely to determine its constitutional validity, not its wisdom).

20. *See* TEX.CODE CRIM. PROC. art. 36.14.

**B. The parole law instruction required by Article 37.07, section 4(a) does not violate a defendant's due process or due course of law rights.**

■ Next, appellant argues that the "jury instruction on good conduct time is unconstitutional under both the federal and State constitutions because it is a misstatement of the law and affirmatively misleads the jury." Appellant makes no distinction between his rights under the Texas and federal constitutions. Therefore we will treat them as being the same in this context.[21]

The legislatively mandated instruction informs the jury about parole and good conduct time generally, but it also explicitly tells them not to consider the manner in which the parole law or good conduct time might be applied to this particular defendant.[22] Appellant, however, argues that the statutory language is unconstitutional because it affirmatively misleads the jury by stating that Appellant may earn time off the period of incarceration by earning good conduct time, when in fact good conduct time is irrelevant to the amount of time Appellant will serve on his sentence.

Although appellant is correct in concluding that good conduct time has no effect on his parole eligibility date and that he is not eligible for mandatory supervision, it does not necessarily follow that good conduct time he earns will have *no* effect on the time appellant actually serves in prison on his sentence.[23] Furthermore, the jury is told only that earning good conduct time "may" result in "time off the period of incarceration imposed," and not that it necessarily will.[24]

The practical import of the trial court's instruction to the jury is that "If an inmate behaves well, he will likely get out of pris-

**21.** *See McCambridge v. State*, 712 S.W.2d 499, 501–502 n. 9 (1986) (warning that "[a]ttorneys, when briefing constitutional questions, should carefully separate federal and state issues into separate grounds and provide substantive analysis or argument on each separate ground. If sufficient distinction between state and federal constitutional grounds is not provided by counsel, this Court may overrule the ground as multifarious").

**22.** TEX.CODE CRIM. PROC. art. 37.07, § 4(a) (instructing jury "not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant" and directing jurors "not to consider the manner in which the parole law may be applied to this particular defendant").

**23.** It is quite possible, indeed probable, that the accumulation of good conduct time will favorably influence the parole board to release an inmate eligible for parole at an earlier date than one who does not have such credits. In its policy statement relating to parole decisions, the Board of Pardons and Paroles has explicitly stated:

Other than on initial parole eligibility, the person must not have had a major disciplinary misconduct report in the six-month pe-

riod prior to the date he is reviewed for parole; which has resulted in loss of good conduct time or reduction to a classification status below that assigned during that person's initial entry into TDCJ ID.

37 TAC § 145.3(2)(A) (2002). Indeed, even if an inmate has obtained a favorable vote for release on parole, but he loses *any* of his good conduct time before he is released, the parole board shall review and revote on its original decision to release him. *Id.* § 145.3(2)(C).

**24.** In contrast, those who are eligible for release on mandatory supervision definitely *will* have their accumulated good conduct time applied toward an early release date, though the parole board still has discretion to deny early release if it finds that the good conduct time does not accurately reflect an inmate's rehabilitation and probable danger if released. *See* TEX. GOV'T CODE § 508.149(b) ("An inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public").

on sooner than if he misbehaves. However, no one can predict when he will actually get out, except that it will not be until he has served at least one-half his sentence or thirty years." This is the message that the Legislature intended to convey in section 4(a), and this is, under any fair reading of the instruction, the message that it did convey. That is a legally accurate message.

The constitutional issue before us, then, is this: Does a statute which informs the jury of the existence of good conduct time, briefly describes that concept, and explicitly tells the jury not to apply that concept to the particular defendant, violate due process if the defendant's eligibility for parole or release on mandatory supervision will not be affected by good conduct time?[25] We conclude that it does not.

■ First, we start with the normal presumption that the statute is constitutional and does not violate a defendant's due process rights.[26] Appellant must shoulder the burden to establish that the jury instruction required under article 37.07, section 4(a) is unconstitutional.[27]

■ We agree with our sister court, the Supreme Court of Texas, that the mere fact that opinions regarding a statute's constitutionality may differ is not a sufficient basis to strike down the legislation.[28] We note that many Texas intermediate courts have considered the very same issue that appellant presents and have, almost uniformly, found that the "good conduct time" instruction does not violate due process.[29] While we are not bound by either the reasoning or result of those

---

**25.** Appellant challenges the constitutionality of the statute "as applied" to him, but no defendant whose punishment charge properly includes the language set out in art. 37.07, § 4(a) is eligible for release on mandatory supervision. *See* Tex. Gov't Code § 508.149 (Vernon Supp.2001) (no inmate may be released on mandatory supervision if his conviction includes an affirmative finding of a deadly weapon or if he is convicted of, *inter alia*, those offenses listed in art. 42.12, § 3g(a)(1)—these being the same offenses for which the § 4(a) jury instruction is required).

**26.** *See Goldblatt v. Town of Hempstead,* 369 U.S. 590, 595–96, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962) (the determination of the constitutionality of a statute, attacked as a violation of due process, begins with the presumption that the statute is constitutional); *Ex parte Granviel,* 561 S.W.2d 503, 511 (Tex.Crim.App. 1978) (when an attack upon the constitutionality of a statute is made, courts begin with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily); *Ex parte Smith,* 441 S.W.2d 544, 547 (Tex.Crim.App.1969) (stating that, when the constitutionality of a statute is attacked, all reasonable doubts should be resolved in favor of the lawful exercise of the legislature's power). Courts seek to interpret statutes such that their constitutionality is supported and upheld. *United States v. Na-*

*tional Dairy Products, Inc.,* 372 U.S. 29, 32, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); *Faulk v. State,* 608 S.W.2d 625, 630 (Tex.Crim.App. 1980).

**27.** *Granviel,* 561 S.W.2d at 511.

**28.** *See Texas Workers' Compensation Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995) (stating that "a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The wisdom or expediency of the law is the Legislature's prerogative, not ours") (quoting *Smith v. Davis,* 426 S.W.2d 827, 831 (Tex.1968)).

**29.** *See, e.g., Bui v. State,* 68 S.W.3d 830, 842 (Tex. App.-Houston [1st Dist.] 2002) (en banc) (overturning *Jimenez* and *Bradley* which had held parole law charge unconstitutional violation of due process); *Donoho v. State,* 39 S.W.3d 324, 331–32 (Tex.App.-Fort Worth 2001, pet. filed); *Espinosa v. State,* 29 S.W.3d 257, 261–62 (Tex.App.-Houston [14th Dist.] 2000, pet. filed); *Cagle v. State,* 23 S.W.3d 590, 594 (Tex.App.-Fort Worth 2000, pet. filed); *Edwards v. State,* 10 S.W.3d 699, 705 (Tex.App.-Houston [14th Dist.] 1999, pet. granted); *Hyde v. State,* 970 S.W.2d 81, 89–90 (Tex.App.-Austin 1998, pet. ref'd); *Martinez v. State,* 969 S.W.2d 497, 501–02 (Tex.App.-Aus-

judicial decisions, they at least indicate that many reasonable minds have examined this instruction and concluded that it does not violate due process.[30]

The United States Supreme Court has directed that, when reviewing a challenged jury instruction, " 'the only question ... is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.' "[31] That Court has also held that "the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record."[32] We also address whether there is a "reasonable likelihood" that the jury applied the challenged instruction in a "way that violates the Constitution."[33]

 Thus, a fair analysis of the parole instruction and the claim that it violates due process requires us to consider the instruction as a whole.[34] The first two paragraphs mention good conduct time and parole in a general way. The third makes it clear that appellant's eligibility

for parole is one-half his actual sentence, or thirty years, whichever is less, "without consideration of any good conduct time he may earn." This sentence contains the instruction's only indicative language, unlike the rest of the instruction which is written in conditional language, replete with "may," "might," "possible," "does not guarantee," and "cannot be accurately predicted." This one factual sentence is the heart of the matter. Appellant makes no claim that this sentence is in any way misleading or erroneous. The final two paragraphs merely go on to explain that no one can predict whether (and if so, how) parole or good time might be applied to appellant.

 Thus, while the jury may consider the existence of parole and good conduct time, it may not consider how good conduct time or the parole law may be applied to appellant.[35] We assume that the jury followed the instructions as given[36] and, under Supreme Court precedent, we will not find federal constitutional error

---

tin 1998, no pet.); *Garcia v. State*, 911 S.W.2d 866, 868–69 (Tex.App.El Paso 1995, no pet.); *compare Bradley v. State*, 45 S.W.3d 221, 223–24 (Tex.App.-Houston [1st Dist.] 2001, pet. filed) (concluding that reference to "good conduct time" in parole law instruction under art. 37.07, § 4(a) violates due process and due course of law when applied to defendants who are not eligible for release on mandatory supervision); *Jimenez v. State*, 992 S.W.2d 633 (Tex.App.-Houston [1st Dist.] 1999) (*"Jimenez I"*), *aff'd on other grounds*, 32 S.W.3d 233 (Tex.Crim.App.2000) (*"Jimenez II"*) (affirming harmless error analysis, without deciding whether statute was unconstitutional as applied).

30. *See supra* note 29.

31. *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (internal quotation marks omitted).

32. *Id.* (internal quotation marks omitted).

33. *Id.* (internal quotation marks omitted).

34. *See Johnson v. Texas*, 509 U.S. 350, 368, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993) ("In evaluating the instructions, [a court should] not engage in a technical parsing of this language of the instructions, but instead approach the instructions in the same way that the jury would-with a 'commonsense understanding of the instructions in the light of all that has taken place at the trial' ") (quoting *Boyde v. California*, 494 U.S. 370, 381, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)).

35. *See, e.g., Keady v. State*, 687 S.W.2d 757, 762 (Tex.Crim.App.1985) (Clinton, J., dissenting) ("Let us accept that jurors are reasonable and sensible persons who can be trusted to follow their oath and instructions from the trial court when they are made to understand the reason they are not to discuss parole") (emphasis in original).

36. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex.Crim.App.1996) (stating: "we assume that the jury would follow the instruction as given, and we will not reverse in the absence

unless we conclude that a reasonable jury probably was actually confused by this charge.[37]

Appellant relies upon the Ninth Circuit case, *Gallego v. McDaniel*,[38] for the proposition that jury instructions which are legally accurate as a general proposition may be misleading as applied to the facts in a particular case. Although we do not necessarily disagree with that proposition, appellant has failed to demonstrate that the parole law instruction in this case was calculated to mislead this jury or that there is a reasonable probability that it did mislead this jury.[39]

Nothing in this record suggests that the jury discussed, considered or tried to apply (despite the judicial admonition *not* to apply) what they were told about good conduct time and parole. Neither the prosecutor nor defense attorney discussed good conduct time in argument or urged the jury to assess a greater (or lesser) sentence based upon any potential good conduct time credit. The jury did not send out any notes indicating or expressing confusion about the possible application of good conduct time to appellant. Although appellant received the maximum sentence possible, life in prison, that is

---

of evidence that the jury was actually confused by the charge"); *Colburn v. State*, 966 S.W.2d 511, 519–20 (Tex.Crim.App.1998) (jury was presumed to follow trial court's instruction not to consider possibility of parole even though jury had sent out note, in capital murder trial, asking whether parole was a possibility if a life sentence were assessed).

37. As stated in *Boyde*, 494 U.S. at 380, 110 S.Ct. 1190 jury instructions which are not themselves legally erroneous but might be "ambiguous and therefore subject to an erroneous interpretation" or application are reviewed to determine "whether there is a reasonable likelihood that the jury has applied the challenged instruction" in an erroneous way. *Id.* As that Court noted:

> Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.

*Id.* at 380–81, 110 S.Ct. 1190. *See also Victor v. Nebraska*, 511 U.S. 1, 6, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994) ("the constitutional question . . . is whether there is a reasonable likelihood that the jury understood the instructions to allow conviction based on proof insufficient to meet the [constitutional] standard"). Our court follows this analysis both for federal due process and due course of law

under the Texas Constitution. *See, e.g., Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim.App.1996).

38. 124 F.3d 1065, 1076 (9th Cir.1997). In *Gallego*, the defendant was convicted of capital murder in Nevada. The jury charge at the punishment phase included an instruction that a capital murder defendant sentenced to life imprisonment without parole is nonetheless eligible for parole through the exercise of executive clemency. *Id.* at 1074. And if the life sentence is commuted, a capital murder defendant would be eligible for parole in ten years. *Id.* Although that was a correct statement of the law, the defendant wanted to inform the jury that, for him, parole was a very, very remote possibility because he was already under a sentence of death in California for capital murder. A separate Nevada law bars the parole of any person whose sentence has been commuted if that person is detained to answer for a crime in another jurisdiction. *Id.* Thus, Gallego could not be paroled even if he managed to have his Nevada life-without—parole sentence commuted unless he also overturned his California death sentence and had that capital murder charge disappear entirely. Under those unusual circumstances in a capital murder sentencing stage, the trial court's instructions as given inadequately stated the law as applied to the specific facts. *Id.* at 1076.

39. *See Victor*, 511 U.S. at 6, 114 S.Ct. 1239; *Boyde*, 494 U.S. at 380, 110 S.Ct. 1190; *Williams*, 937 S.W.2d at 490.

unsurprising given appellant's crime, his cavalier confession, and his abysmal prior criminal record.

Although it is theoretically possible that the jury could have been affirmatively misled in some unspecified way by the totality of the parole law instruction, appellant has not demonstrated a reasonable likelihood that it was, in fact, misled or that it assessed a higher sentence based upon any misconstruction of the parole law charge. We therefore conclude that the parole law instruction, judged as a whole, was not misleading and certainly not so misleading as to convert appellant's trial into a fundamentally unfair proceeding which denied him due process.[40] Indeed, if the jury followed the judge's clear and explicit direction to not apply the general concepts of parole or "good conduct time" in assessing appellant's sentence, there was no error, confusion, or harm. There is no showing that the jury did not follow the instruction in this case. Thus, appellant has failed to shoulder his burden to demonstrate that there is a reasonable likelihood that this jury unconstitutionally misapplied the concept of "good conduct time" to assess a higher sentence as a result of the instruction, thereby denying appellant due process or due course of law.

Because we conclude that appellant has failed to show that his due process rights were violated by the trial judge's action of instructing the jury in accordance with the statutory wording, we need not address the question of what harm analysis would apply if there were a due process violation. Therefore, appellant's fifth ground for review is dismissed as moot.

We affirm the judgment of the trial court and the Ninth Court of Appeals.

PRICE and WOMACK, JJ., concurred in the judgment.

JOHNSON, J., filed a concurring opinion.

JOHNSON, J., filed a concurring opinion.

Appellant asserts that the statutory instruction at issue should not be applied to him because he is not eligible to have good-conduct time count toward his parole eligibility date.

The first two paragraphs of art. 37.07, § 4(a) discuss good-conduct time and parole as means of reducing the period of incarceration and are couched in terms of "possible," "may," and "might." The third paragraph discusses the application of parole eligibility to this appellant and is expressed in terms of certainty: "he will not become eligible," and "he must serve." It also unequivocally sets out that the minimum time of actual incarceration is without consideration of any good-conduct time appellant accrues and points out that being eligible for parole does not guarantee release. The final two paragraphs are directed at the deliberations on sentencing and caution the jurors that release on parole and denial of release are neither predictable nor under their control or influence.

The existence of parole is common knowledge. It is human nature to wonder how parole impacts the length of incarceration. It may be argued that the instruction is contradictory in that it tells the jurors that they may consider the exis-

---

**40.** *See Estelle v. McGuire,* 502 U.S. at 72, 112 S.Ct. 475; *see also Jones v. United States,* 527 U.S. 373, 390, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) ("the proper standard for reviewing such claims [that "allegedly ambiguous instructions caused jury confusion"] is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution") (internal quotation marks omitted).

tence of parole, but that they may not consider how parole law will affect a given defendant, or that the instruction is akin to showing the jurors a pink elephant, and then saying, "Don't think about that pink elephant." In my experience, jurors already know about the elephant; they need information on how the elephant performs in the situation presented to them. The instruction in art 37.07 appears to be an effort to impart to the jury relevant information so that the inevitable wondering is both informed and circumscribed.

When considered as a whole, the instruction in art 37.07, § 4(a) accurately sets out the law applicable to this case and to appellant's circumstances. Appellant is eligible to accrue good-conduct credit, as set out in the first paragraph; he will, in fact, accrue and lose good-conduct time just like any other prisoner. As set out in the second paragraph, at some point it is possible that appellant may be released on parole. This is true as applied to appellant. The third paragraph makes it clear that release to parole will not occur until the lesser of thirty years or one-half of appellant's sentence has been served and that good conduct-time will not count until then. This is also a correct statement. The final paragraphs reflect the reality that the time that appellant will actually spend incarcerated is only partly determined by the jury's decision on sentencing. It is only when the instruction's parts are examined in isolation that the probability of violation of due process arises. The jury was given the entire instruction in correct form.

I concur in the judgment of the Court.