In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-01-00624-CR

____________


DON RICHARD DAVIS, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 272nd District Court

Brazos County, Texas

Trial Court Cause No. 24,315-272






O P I N I O N


 Appellant, Don Richard Davis, pled guilty before the jury to two counts of
aggravated sexual assault. The jury assessed punishment at 99 years in prison and a
fine of $10,000 on each count. We address (1) whether the statutory instruction
regarding parole and good-conduct time was unconstitutional as applied to appellant,
(2) whether trial counsel was ineffective for failing to object to two arguments by the
prosecutor and for failing to request a limiting instruction concerning the otherwise
inadmissible, underlying facts of an expert's opinion, and (3) whether the trial court
abused its discretion by allowing the prosecutor to question the defense psychologist
concerning sexually explicit letters written by appellant. We affirm. 

Facts

 On January 30, 1995, appellant sexually assaulted the complainant, a Texas
A&M co-ed, anally and orally at knife point, after having confronted the complainant
on campus. On May 4, 1995, appellant sexually assaulted another Texas A&M co-ed
in the same manner. 

The Parole and Good-Conduct-Time Instruction

 In his first issue presented for review, appellant contends article 37.07, section
(4)(a) of the Texas Code of Criminal Procedure is unconstitutional, as applied to him,
under the Due Process clause of the Fourteenth Amendment to the United States
Constitution. See U.S. Const. amend. XIV; Tex. Code Crim. Proc. Ann. art. 37.07,
§ 4(a) (Vernon Supp. 2002). Appellant objected at trial that the instruction did not
apply to him because he was not entitled to consideration for good-conduct time for
the offenses to which he had pled guilty.

 Appellant acknowledges that this issue has been decided adversely to him in
Luquis v. State, 72 S.W.3d 355, 365-66, 368 (Tex. Crim. App. 2002) (holding
instruction not unconstitutional, for violating due process or due course of law, as
applied to defendant who is ineligible for good-conduct-time credit). However,
appellant claims he fits within an exception noted in Luquis, which exception applies
when the record shows the jury was actually confused by the instruction. See id.at
366-67. Appellant relies on a note from the jury asking the difference between
sentences of 99 years and life. See id. at 367 (suggesting note from jury might show
jurors' confusion). The note in this case indicates the jury's confusion regarding the
two sentences. The note does not show any confusion regarding appellant's
eligibility for good-conduct-time credit. Accordingly, we hold that the general rule
of Luquis, that the parole and good-conduct-time instruction is not unconstitutional
as applied, controls the disposition of this issue. See id. at 368.

 We overrule appellant's first issue presented for review.

Ineffective Assistance of Trial Counsel

 In his second, third, and fifth issues presented for review, appellant contends
his trial counsel was ineffective for failing to object to two portions of the
prosecutor's closing argument and for failing to request a limiting instruction
concerning the underlying facts of an expert's opinion.


 Standard of Review


 To establish ineffective assistance of counsel, appellant must show (1)
counsel's representation fell below an objective standard of reasonableness and (2)
but for counsel's errors, the result of the proceedings would have been different. 
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). 
Appellant must overcome the presumption that the challenged action might be
considered sound trial strategy. Id., 466 U.S. at 689, 104 S. Ct. at 2065; Thompson
v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999); Gamble v. State, 916 S.W.2d
92, 93 (Tex. App.--Houston [1st Dist.] 1996, no pet.). Rather than examining
counsel's isolated acts or omissions, we evaluate the totality of the representation
from counsel's perspective at trial and not in hindsight. Ex parte Welborn, 785
S.W.2d 391, 393 (Tex. Crim. App. 1990); Wilkerson v. State, 726 S.W.2d 542, 548
(Tex. Crim. App. 1986).


 "Appellant has learned how to be a better rapist."


 In his second issue presented for review, appellant claims that, when the
prosecutor argued that appellant had learned how to be a better rapist, the prosecutor
invited the jury to speculate on matters outside the record. Appellant points out that
he had developed testimony from an Ohio special agent with the Federal Bureau of
Investigation that the agent knew of no sexual assault cases in the Cleveland area in
which appellant was a suspect. 

 In closing argument, counsel for appellant argued that, had appellant been a
suspect in any sexual-assault cases in Detroit or Cleveland, the jury would have heard
about it. The prosecutor then argued as follows:


 As a matter of fact, we found out, of course, that the second rape
was being planned two weeks in advance. Remember that the second
rape was much more brutal than the first. Much more well planned
because it was in a much more secluded area than the first rape. 


 What does that tell you, ladies and gentlemen, about his ability to
become a better rapist? Don't you think he has learned how to become
a better rapist in six years? Think about that.


 [Defense counsel] comes to you and says, "Well, we don't know
of any other evidence up in Cleveland, don't you think we would have
heard of that?" No, we won't. He knows to wipe DNA off. He's
probably not ejaculating in people's faces any more, right? He's [sic]
knows to cover their face now. He is not going to make the same
mistakes twice because he is a serial rapist.


(Emphasis added.) Trial counsel objected as follows, but solely to the character of
appellant as a serial rapist:


 Trial Counsel: Excuse me, Judge, I'm going to object to the State
calling him serial rapist when they've only got two
cases of sexual assault. That doesn't make a serial
rapist.

 

 The Court: State's response?


 Prosecutor: Your Honor, serial rapist is more than one.


 The Court: Objection overruled.


 Appellant called trial counsel to testify at the hearing on appellant's motion for
new trial, which asserted trial counsel was ineffective. When asked to explain his
failure to object to the argument referring to appellant's having "learned how to be
a better rapist," trial counsel answered that he had had only two seconds to decide
whether to object, that the whole trial was a punishment hearing asking the jury for
a favor, that jurors do not like lawyers who object all the time, and that the prosecutor
had not objected to trial counsel's argument. Trial counsel conceded that the
prosecutor's argument was somewhat invited by trial counsel's own argument that
there was no evidence appellant had committed violent offenses in the last five or six
years. However, trial counsel testified that, in hindsight, he thought he should have
objected. 

 Appellant argues that the prosecutor's argument was outside the four
permissible areas of jury argument: (1) summation of the evidence; (2) reasonable
deductions from the evidence; (3) answer to argument of opposing counsel; and (4)
a plea for law enforcement. See Wilson v. State, 938 S.W.2d 57, 59 (Tex. Crim. App.
1996). Appellant also points out that the prosecutor had acknowledged during a pre-trial conference in chambers that he was unaware of any other sexual assaults
allegedly committed by appellant. Appellant argues that trial counsel's explanation
that he did not object so as not to alienate the jury does not ring true because trial
counsel did object to the serial-rapist remark immediately after not objecting to
remarks that appellant had learned how to be a better rapist. Appellant claims harm
from the maximum sentences assessed in cases in which appellant was eligible for
probation and thus should have received sentences somewhere in the low-to-middle
range.

 The State contends that the prosecutor was responding to trial counsel's
argument that the jury would have heard about any further offenses had there been
any and was making reasonable deductions from the evidence that appellant had
learned from one offense to the next. Thus, the State contends, trial counsel was not
ineffective for not objecting because the argument was proper. In the alternative, the
State argues that appellant has not shown he was harmed by trial counsel's failure to
object. 

 Under the circumstances presented here, trial counsel's explanation for not
objecting is plausible, and the trial court could have accepted this explanation at the
hearing on appellant's motion for new trial. Appellant has not met his burden of
establishing deficient performance.

 Accordingly, we overrule appellant's second issue presented for review.


 Accusing Trial Counsel of Concealing the Truth


 In his third issue presented for review, appellant contends his trial counsel was
ineffective for not objecting when the prosecutor struck at appellant over the
shoulders of his counsel by accusing trial counsel of concealing the truth. Appellant
places the argument in context by pointing out the lengthy negotiations that had taken
place concerning a pornographic magazine and eight pornographic letters that
appellant had written, but had not sent. These items were recovered during a search
of appellant's room. (1) As a result of these negotiations, the parties agreed that the
magazine would be admitted, but that the State would not use the letters to impeach
appellant. During the testimony of appellant's psychologist, however, the prosecutor
was allowed to use excerpts from the letters to impeach the psychologist.

 In his closing argument, the prosecutor argued as follows:

 Dr. Hughes got on the stand and she tried to kind of play around
and say, "He's a nice guy. I can do a treatment plan for him, minimize
his risk of reoffending." Then, ladies and gentlemen, we got ahold of
the records. We got ahold of her notes. And they weren't planning on
that. They weren't planning on us finding out that he told the
psychologist that no, he wasn't having fragmented thinking. He
wasn't in this haze of methamphetamines when he brutally raped Jane
Doe 1 and Jane Doe 2. He gave her a play-by-play, minute-by-minute,
second-by-second [account] of both rapes.


(Emphasis added.)

 When trial counsel was asked if he had any trial strategy for not objecting to
the above-emphasized argument, he said he did not consider it necessary to object.

 Appellant claims the prosecutor argued outside the record by allegedly
referring to the lengthy and contentious dispute between the attorneys over
admissibility of the notes. Appellant mainly complains that the argument struck at
appellant over the shoulders of trial counsel by accusing trial counsel of concealing
matters. Appellant again claims harm from the extreme sentences, which he contends
resulted from the loss of credibility of trial counsel, who stood mute while being
impugned by the prosecutor's argument.

 The State responds that the prosecutor was targeting the psychologist, not trial
counsel, and that there was evidence that appellant had read psychology books to
manipulate his psychologist.

 Even if trial counsel should have objected to the prosecutor's argument, an
isolated lapse does not amount to ineffective assistance of counsel, as long as
counsel's overall representation is effective. See Ex parte Welborn, 785 S.W.2d at
393; Wilkerson, 726 S.W.2d at 548. Indeed, appellant makes no claim that trial
counsel's overall representation was deficient during the lengthy, four-day trial. 
Moreover, appellant has not established harm. Appellant has not shown that, but for
trial counsel's failure to object, another result would have probably occurred. 

 Accordingly, we overrule appellant's third issue presented for review.


 Not Requesting a Limiting Instruction


 In his fifth issue presented for review, appellant contends his trial counsel was
ineffective for failing to request a limiting instruction concerning the underlying facts
of an expert's opinion. Appellant argues that a limiting instruction would have
limited the jury's consideration of appellant's sexually explicit letters to the validity
of the expert's opinion and for no other purpose. Appellant relies on trial counsel's
admission that trial counsel had no trial strategy for not requesting a limiting
instruction. Appellant claims prejudice from the letters' portrayal of appellant as a
"masochistic, sex-crazed pervert." Appellant points out that the prosecutor spent 20
pages of the record developing what appellant claims is the most injurious and
prejudicial evidence the prosecutor elicited, aside from the offense itself.

 Despite trial counsel's having denied that trial strategy was the reason for not
requesting an instruction, the State points out that not requesting a limiting instruction
can be considered trial strategy because not requesting the instruction avoids
emphasizing evidence that would be the subject of that instruction. The State also
argues that appellant did not meet his burden of showing that the result of the trial
would have been different if a limiting instruction had been requested.

 The record shows that the prosecutor used portions of letters, which appeared
to be written in response to personal ads, during cross-examination of appellant's
psychologist. Trial counsel had provided the letters to the psychologist for the
purpose of evaluating appellant and his risk of reoffending. Appellant told the
psychologist that he had written the letters with a friend as a joke. Appellant signed
the letters, included his phone number, and requested that callers be discreet because
he had roommates. In the letters, appellant wrote the following: "I love breaking
taboos."; "I'm very oral and I like to perform it just as much as I receive it."; "I would
like to make you come until you go crazy. I'm 21, five-foot-ten, 170 pounds, very
athletic. I'm told I'm good-looking, have blue eyes, brown hair, and I love sarcasm.";
"I dated plenty of bimbos but never anyone who was willing to take control. Help,
I love to perform oral and anything else to drive the woman I'm with crazy. I would
like to me [sic] some of you to prove myself."; "You sound like just the whore I have
been waiting for. I'm five-foot-ten, 170 pounds, athletic with brown hair and blue
eyes. I'm also 21 years old. I also have eight inches of cock you'll never forget. Call
me, but be discreet, I have roommates."; "I'm very athletic with brown hair and blue
eyes. I also have a seven-and-a-half inch cock and more oral than you could imagine. 
Call me, but please be discreet, I have roommates. I can give you wilder sex then
[sic] any 30-to-50 year [sic] can."; "I'm not promiscuous and am drug and disease
free. I would like to make it clear, though, that I am very heterosexual, not interested
in any bi-contact. I'm not opposed however to a menage a trois."; and "I love to
dominate in bed, and I love to turn any woman I'm with into a cock-sucking slave. 
My cock is seven-and-a-half inches. I satisfy your Greek curiosity, you'll never
forget it. You said in your ad that you are very oral. I think I'm the oral expert
you've been looking for." 

 In his cross-examination of the psychologist, the prosecutor treated the letters
as illustrating appellant's fantasies. The prosecutor asserted that the letters showed
(1) appellant was fantasizing about all sorts of sex prior to the rapes and (2) appellant
had a progression of sexual fantasies about deviant sexual acts as a precursor to
raping the two women. The psychologist did point out that the fantasies involved
willing partners, although the acting out was with unwilling partners. At one point,
the prosecutor emphasized that appellant turned the two victims into "his cock-sucking slaves." When asked if the fantasies in the letters spoke to whether appellant
would be an appropriate candidate for probation and treatment, the psychologist
testified that, even without the letters, her opinion would have been that he had 
fantasized prior to the rapes. When asked if it was significant that appellant had
admitted these fantasies to the psychologist, but denied them in testifying to the jury,
the psychologist testified that denial would not be unusual or significant because
denial is common with sex offenders prior to treatment. 

 The letters were mentioned only once during closing argument, and that
instance was within the context of showing appellant was a liar. The prosecutor
argued that, despite appellant's psychologist's having testified that all sex offenders
have sexual fantasies before their rapes, appellant had taken the stand, looked the
jurors in the eye, and denied he had fantasies. The prosecutor then argued that the
jury could know that appellant was lying about not fantasizing because of "the letters
that said he wants every woman to be his cock-sucking whore, or words to that effect,
excuse my language." 

 We note that the prosecutor did not confine his use of the letter excerpts during
jury argument to attacking the validity of the psychologist's opinion. Rather, the
prosecutor used the excerpt to impeach appellant's testimony about whether appellant
had fantasized. In the same context, the prosecutor relied on the defense
psychologist's opinion that appellant had fantasized to demonstrate the point that
appellant was a liar for denying that he had fantasized. The prosecutor did not use
the letter excerpts to urge the jury to sentence appellant more severely because
appellant was a pervert for writing such letters. The only use the prosecutor made of
the letter excerpts was cumulative of his use of some of the testimony from
appellant's own psychologist. The prosecutor used both the letter excerpts and the
testimony to show appellant was lying about not having fantasized before committing
the offenses. Considering all of the circumstances, we conclude that, even if trial
counsel was deficient for not requesting a limiting instruction, appellant did not meet
his burden to show that he was more severely punished because of the lack of that
instruction.

 Accordingly, we overrule appellant's fifth issue presented for review.

Impeachment of Expert With Inadmissible Letter Excerpts

 In his fourth issue presented for review, appellant complains that the trial court
abused its discretion in allowing the prosecutor to question the defense psychologist
concerning the sexually explicit letters appellant had written. Appellant argues that
the trial court's ruling is contrary to the balancing test of rule 705(d) of the Texas
Rules of Evidence. See Tex. R. Evid. 705(d). (2)

 Appellant acknowledges the psychologist's opinion that appellant had a
medium-high risk for reoffending, would respond well to outpatient treatment, and
would thus be capable of rehabilitation, and also acknowledges that the psychologist
based her opinions on the entire contents of her file, including the personal want-ad
letters written by appellant before the sexual assaults. Appellant claims that
testimony from the psychologist that the letters did not alter her opinion that appellant
was a suitable candidate for probation made the letters irrelevant and, thus,
inadmissible. Appellant overlooks that the very reason the prosecutor wanted to use
the letter excerpts was to impeach the psychologist's opinion by showing that the
letter excerpts should have caused the expert to reach a different conclusion. 
Referring to inadmissible matters to impeach an expert who considered those matters
is well established. See Nenno v. State, 970 S.W.2d 549, 564 (Tex. Crim. App. 1998)
(concluding State was entitled to cross-examine capital-murder defendant's testifying
expert concerning contents of report made by that expert's colleague, who had
interviewed defendant about crime, when testifying expert relied upon other expert's
report in forming his own opinion). 

 Accordingly, we overrule appellant's fourth issue presented for review.


Conclusion

 We affirm the judgment of the trial court.


 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Price. (3)


Do not publish. Tex. R. App. P. 47.4.
1. The trial court had ruled the search producing the letters was unlawful.
2. Rule 705(d) provides as follows:


 When the underlying facts or data would be inadmissible in evidence, the court
shall exclude the underlying facts or data if the danger that they will be used
for a purpose other than as explanation or support for the expert's opinion
outweighs their value as explanation or support or are unfairly prejudicial. If
otherwise inadmissible facts or data are disclosed before the jury, a limiting
instruction by the court shall be given upon request.


 Tex. R. Evid. 705(d).
3. The Honorable Frank C. Price, former Justice, Court of Appeals, First District
of Texas at Houston, participating by assignment.