

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-17-00114-CR

PATRICIA ANNETTE FLORES                                          APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

### FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 1452459D

----------

## MEMORANDUM OPINION[1]

----------

Appellant Patricia Annette Flores pleaded guilty to murdering her two-year-old grandson, L.M.F. *See* Tex. Penal Code Ann. § 19.02(b)(2) (West 2011). The jury assessed punishment at 57-1/2 years' confinement, and the trial court sentenced Flores accordingly. In one point, Flores complains that the jury charge

---

[1]*See* Tex. R. App. P. 47.4.

on punishment violated her due-process and due-course-of-law rights. As this issue is well settled, we affirm.

## Background

In 2016, shortly before L.M.F.'s second birthday, Child Protective Services placed him and his younger sister into their paternal grandmother's, Flores's, custody. During the late-night hours of March 30, 2016, paramedics responding to a 9-1-1 call arrived at Flores's home, and found L.M.F. listless on the front porch, covered in bandages, and wearing a soiled diaper. Flores told paramedics that L.M.F. had burned himself six days earlier after falling into a hot bath. Flores further explained that she had decided to not seek professional medical care for L.M.F. but rather to treat the burns herself because she had past training as a certified nurse's assistant. Flores had finally relented and called 9-1-1 that evening when L.M.F. lost consciousness. Citing Flores's apparent indifference for L.M.F.'s well-being and other suspicious behavior, paramedics denied her request to accompany L.M.F. in the ambulance.

Upon his arrival at Cook Children's Hospital in Fort Worth, doctors began treating the second- and third-degree burns that covered roughly 20% of L.M.F.'s body, including his feet, hands, thighs, buttocks, and genitals. Due to his extensive burns, as well as some internal bleeding, L.M.F. was transported to Parkland Hospital's burn unit in Dallas, then to Children's Medical Center in

Dallas, and finally back to Parkland.[2] Despite the healthcare providers' efforts, L.M.F. died on April 4, 2016, after lingering for five days. Flores—who was still L.M.F.'s legal guardian—visited him only once in the hospital and learned his fate on social media. Sometime around L.M.F.'s death, Flores left town and did not return for the funeral.

An autopsy revealed that a perforated ulcer had formed due to the inadequate burn care L.M.F. had received at Flores's hands in the days immediately following the initial incident. This ulcer caused L.M.F.'s death. A doctor later estimated that immediate professional medical care would have given L.M.F. a 99% percent chance of survival. After pleading guilty to murder, a first-degree felony, Flores asked the jury to assess her punishment. Evidence presented at that stage suggested that Flores had placed L.M.F. in scalding hot water: his burns were inconsistent with those typically sustained in an accidental fall but rather indicated that L.M.F. had entered the water in a defensive position. The jury gave Flores 57-1/2 years.

## Discussion

In her sole point, Flores argues that the punishment charge violated her rights to due process and due course of law because it "sow[ed] confusion in the minds of the jury" concerning Flores's possibly receiving good-conduct time while

---

[2]The doctors initially determined, and an autopsy later confirmed, that L.M.F's internal bleeding was caused by a type of perforated ulcer that forms when external burns are left untreated.

3

in prison. *See* U.S. Const. amends. V, XIV; Tex. Const. art. I, §§ 13, 19. When reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).

Flores acknowledges, as she must, that the instruction concerning the possibility of obtaining good-conduct time is mandated by article 37.07, section 4(a) of the Texas Code of Criminal Procedure and that the court of criminal appeals has addressed this issue and found no due-process or due-course-of-law violation. *See* Tex. Code Crim. Proc. Ann. art. 37.07 § 4 (West Supp. 2017); *Luquis v. State*, 72 S.W.3d 355, 357, 363–68 (Tex. Crim. App. 2002). She argues, however, that the instruction was erroneous and unconstitutional as applied to her because a person serving a sentence for murder cannot accumulate good-conduct time credits for parole release.[3] *See* Tex. Gov't Code Ann. § 508.145(d)(1)(A) (West. Supp. 2017); Tex. Code Crim. Proc. Ann. art. 42A.054(a)(2) (West. Supp. 2017).

In *Luquis*, the court recognized that the instruction dictated by the code of criminal procedure may appear to be misleading and inapplicable to some defendants. 72 S.W.3d at 362–63. Nevertheless, it construed article 37.07, section 4(a) to be an absolute command that the good-conduct-time instruction be given to the jury. *Id.* at 363. Accordingly, a trial judge who gives the instruction does not err. *Id.* The court further concluded that even if the statutorily required

---

[3]Flores candidly notes that she has raised this complaint to preserve the issue for further review.

instruction does not apply, giving it does not violate a defendant's due-process or due-course-of-law rights. *Id.* at 364–68.

We are of course bound by the Texas Court of Criminal Appeals's precedent and cannot disregard or overrule it. *See Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004) (op. on reh'g), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007). Accordingly, following *Luquis*, we hold that the trial court's charge did not violate Flores's due-process and due-course-of-law rights. *See Luquis*, 72 S.W.3d at 363, 368.[4] We overrule Flores's sole point and affirm the trial court's judgment.

---

[4]This case is not the first in which we have so held. *See Sanders v. State*, 255 S.W.3d 754, 765–66 (Tex. App.—Fort Worth 2008 pet. ref'd) (following *Luquis* and noting that in *Cagle v. State*, 23 S.W.3d 590, 594 (Tex. App.—Fort Worth 2000, pet. ref'd), our court also determined that a jury charge like the one here does not violate a defendant's due-process rights); *see also Reed v. State*, No. 02-14-00444-CR, 2016 WL 4538565, at *4 (Tex. App.—Fort Worth Aug. 31, 2016, pet. ref'd) (mem. op., not designated for publication) (following *Luquis*); *Sampson v. State*, No. 02-15-00202-CR, 2016 WL 4474339, at *1–2 (Tex. App.—Fort Worth Aug. 25, 2016, pet. ref'd) (mem. op., not designated for publication) (same); *Williams v. State*, No. 02-14-00194-CR, 2014 WL 7345139, at *1 (Tex. App.—Fort Worth December 23, 2014, pet. ref'd) (mem. op., not designated for publication) (same); *Thomas v. State*, No. 2-09-341-CR, 2010 WL 3377792, at *1–2 (Tex. App.—Fort Worth Aug. 27, 2010, pet. ref'd) (mem. op., not designated for publication) (same); *Jennings v. State*, No. 2-08-145-CR, 2009 WL 1564961, at *6–7 (Tex. App.—Fort Worth June 4, 2009, pet. ref'd) (mem. op., not designated for publication) (same).

/s/ Elizabeth Kerr
ELIZABETH KERR
JUSTICE

PANEL:  WALKER, KERR, and BIRDWELL JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 29, 2018