COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS



)
 

CHARLES WILLIAM FISHER,
)
 No. 08-02-00289-CR

)


 Appellant,
)
 Appeal from

)
 

v.
)
 Criminal District Court No. 2

)


THE STATE OF TEXAS,
)
 of Dallas County, Texas

)


 Appellee.
)
 (TC# F-0056710-QI)


MEMORANDUM OPINION



 Charles Fisher was charged with aggravated robbery of a motor vehicle. The jury found him
guilty, found the enhancement paragraph to be true, and assessed punishment at twenty years in the
Institutional Division of the Texas Department of Criminal Justice. Finding no error, we affirm.

FACTUAL SUMMARY


 Matthew Lifto drove his 1999 black Camaro from his apartment to a nearby self-service car
wash at 4:30 p.m. on December 9, 2000. Upon returning to his apartment, he noticed a car follow
him into his gated complex and park three spaces behind him. He believed the car had followed him
from the car wash. Lifto parked his car, turned off the engine, and opened the door. He had not seen
anyone approach his vehicle but when he opened the door, Appellant was standing there. Appellant
started shouting, "Give me the keys." He slashed at Lifto's hand which immediately began to bleed. 
Lifto realized he had been cut by a box cutter with a retractable razor blade.

 Lifto exited the car and threw his keys into the seat. Appellant reached inside to grab the
keys. Lifto tried to walk away, but Appellant came toward him again, this time demanding his
wallet. Appellant pushed Lifto up against the car. Lifto told him his wallet was in the car. When
Appellant turned to look inside the car, Lifto ran to his apartment. He told his wife to call 911 and
Appellant drove away in the Camaro. When the police officers arrived, Lifto provided a description
of a white male assailant and the Camaro. The license plate of the vehicle Appellant had left behind
was entered into the police computer system and showed up as having been stolen as well.

 Michael Magiera was working undercover on the night of December 9. Early the next
morning, he noticed a black Camaro matching the description of a stolen car listed on his "hot
sheet." Officer Magiera followed the Camaro into an apartment complex parking lot. When the
vehicle parked, Magiera boxed it in with his vehicle. A marked police unit arrived at the scene to
assist. The Camaro was driven by Anita Sorrells and she was accompanied by a passenger named
"Mike." The pair were nervous and hesitant about exiting the car. Sorrells was placed under arrest
for unauthorized use of a motor vehicle. She told the officer that "Charles" had given her the car. 
She had dropped him off at a Dallas hotel and she provided the location and the room number. Her
description of "Charles" matched Lifto's description of his assailant. Approximately twelve hours
elapsed between the time the car was stolen and the time it was recovered and the occupants
apprehended. 

 The officers went to the hotel and, after observing the room for fifteen or twenty minutes,
they knocked on the door. Appellant, matching the description given by Sorrells and Lifto, answered
the door. He gave the officers permission to enter the room and consented to a search for weapons. 
The officers discovered a wallet underneath the couch cushion and Lifto's checkbook on the
windowsill. Appellant initially said the wallet belonged to him. When they asked for identification,
Appellant gave them Lifto's drivers license. When the officers told them that his picture did not
match the one on the license, Appellant handed them his license. He was subsequently arrested. 

 Later that day, Lifto received a telephone call from the police that his car, wallet, and
checkbook had been recovered. He went to the police station and identified Appellant from
photographs. When he retrieved his checkbook, he realized that several checks were missing. Over
the next few months, he also learned his credit cards and debit cards had unauthorized charges which
were made the day of the robbery.

 At trial, Detective Bricker testified that a box cutter is capable of causing serious bodily
injury and can be used as a dangerous weapon. Sorrells, testifying for the defense, said she had been
friends with Appellant for about twelve years. She described how Appellant arrived at her apartment
in the black Camaro. He never told her the car was stolen, but she assumed that it was. She later
took Appellant to a hotel where she dropped him off. She and Mike left in the Camaro. Mike found
Lifto's wallet when he opened the glove compartment. The pair then went on a shopping spree using
Lifto's checks and credit cards. 

 Appellant's testimony focused on events at the car wash. He testified that Lifto approached
him, looking for drugs. Appellant sat inside the Camaro and while he was displaying the
merchandise, Lifto reached into the center console to grab a box cutter. Appellant was scared,
shoved Lifto out of the car, and drove off. He did not intend to take Lifto's wallet or checkbook and
his only intention was to escape from Lifto after he tried to steal the contraband. He admitted to
taking the car without Lifto's consent but claimed he never touched the wallet or checkbook and had
no idea why they were in his hotel room.

FACTUAL SUFFICIENCY


 In Point of Error One, Appellant contends that the evidence is factually insufficient to support
his conviction because the State failed to prove beyond a reasonable doubt that he committed 
aggravated robbery. When conducting a factual sufficiency review, we consider all of the evidence
but we do not view it in the light most favorable to the verdict. Clewis v. State, 922 S.W.2d 126, 129
(Tex.Crim.App. 1996); Levario v. State, 964 S.W.2d 290, 295 (Tex.App.--El Paso 1997, no pet.). 
We review the evidence weighed by the fact finder that tends to prove the existence of the elemental
fact in dispute and compare it with the evidence that tends to disprove that fact. Johnson v. State,
23 S.W.3d 1, 7 (Tex.Crim.App. 2000); Jones v. State, 944 S.W.2d 642, 647 (Tex.Crim.App. 1996),
cert. denied, 522 U.S. 832, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997). A defendant challenging the
factual sufficiency of the evidence may allege that the evidence is so weak as to be clearly wrong and
manifestly unjust, or in a case where the defendant has offered contrary evidence, he may argue that
the finding of guilt is against the great weight and preponderance of the evidence. See Johnson, 23
S.W.3d at 11. Although we are authorized to set aside the fact finder's determination under either
of these two circumstances, our review must employ appropriate deference and should not intrude
upon the fact finder's role as the sole judge of the weight and credibility given to any evidence
presented at trial. See Johnson, 23 S.W.3d at 7. We are not free to reweigh the evidence and set
aside a verdict merely because we feel that a different result is more reasonable. Cain v. State, 958
S.W.2d 404, 407 (Tex.Crim.App. 1997); Clewis, 922 S.W.2d at 135.

 Arguing that Lifto pulled the box cutter on him in order to steal the drugs, Appellant claims 
he did not threaten the victim with a deadly weapon. Consequently, Appellant contends he is only
guilty of robbery or unauthorized use of a motor vehicle. The trial court properly instructed the jury
on these lesser included offenses. The jury, as the fact finder, resolved the factual dispute in Lifto's
favor and it was within the jury's province to accept or reject Appellant's version of the events at the
car wash. Because we conclude that the evidence is not so weak as to be clearly wrong and
manifestly unjust, we overrule Point of Error One.

LEGAL SUFFICIENCY


 In Point of Error Two, Appellant argues the evidence is legally insufficient to prove that the
box cuter constituted a deadly weapon. In reviewing legal sufficiency, we consider all the evidence,
both State and defense, in the light most favorable to the verdict to determine whether any rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); Geesa
v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). This familiar standard gives full play to the
responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence,
and to draw reasonable inferences from basic to ultimate facts. Jackson, 443 U.S. at 319, 99 S.Ct.
at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility to the
witnesses, as it was the function of the trier of fact to do so. See Adelman v. State, 828 S.W.2d 418,
421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead,
our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational
by viewing all of the evidence admitted at trial in a light most favorable to the verdict. Adelman, 828
S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843. Further, the standard of review is the same for both direct and
circumstantial evidence cases. Geesa, 820 S.W.2d at 158.

 Aggravated robbery is a felony of the first degree. A person commits aggravated robbery if
he commits an offense of robbery as defined in Section 29.02, and he: (1) causes serious bodily
injury to another; (2) uses or exhibits a deadly weapon; or (3) causes bodily injury to another person
or threatens or places another person in fear of imminent bodily injury or death. Tex.Pen.Code
Ann. § 29.03 (Vernon 2003). A deadly weapon is defined in section 1.07 of the Penal Code as
follows: 

 (A) a firearm or anything manifestly designed, made, or adapted for the purpose of
inflicting death or serious bodily injury; or 


 (B) anything that in the manner of its use or intended use is capable of causing death
or serious bodily injury. 


Tex.Pen.Code Ann. § 1.07(17)(A) and (B)(Vernon 2003). The Court of Criminal Appeals has
concluded that utility knives, butcher knives, eating utensils, and straight razors have an obvious
purpose apart from inflicting death or serious bodily injury and thus are not deadly weapons per se. 
McCain v. State, 22 S.W.3d 497, 502-03 (Tex.Crim.App. 2000)(en banc). The court emphasized,
however, that the placement of the word "capable"in subsection (17)(B) applies to any object,
including a knife, that in the manner of its use or intended use threatens deadly force, even if the
actor does not intend to actually use deadly force. Id.

 Appellant contends a box cutter cannot be used to cause serious injury. We disagree. 
Detective Bricker, a police officer of some twenty-eight years' experience, testified to the contrary. 
He explained that a box cutter or utility knife is a dangerous weapon capable of causing serious
bodily injury. While Appellant argues that he did not intend to use the box cutter as a deadly
weapon, the record reveals he "slashed" at Lifto when he demanded the car keys. He threatened
Lifto again when he demanded the wallet. The jury was entitled to believe that he intended to use
the box cutter in such a fashion as to cause Lifto to be fearful and feel threatened so he would hand
over his car keys and wallet. Viewing all of the evidence in a light most favorable to the verdict, we
find that the box cutter as used was capable of causing serious bodily injury. We overrule Point of
Error Two.

JURY INSTRUCTION


 In Point of Error Three, Appellant contends the trial court erred by instructing the jury
regarding the availability of good conduct as it pertains to parole. He argues that the instruction
should not have been given inasmuch as he is precluded from receiving good conduct time credit. 
Tex.Gov't Code Ann. § 508.149 (Vernon 1998). The trial court instructed the jury as follows:

 Under the law applicable in this case, the defendant, if sentenced to a term of
imprisonment, may earn time off the period of incarceration imposed through the
award of good conduct time. Prison authorities may award good conduct time to a
prisoner who exhibits good behavior, diligence in carrying out prison work
assignments, and attempts at rehabilitation. If a prisoner engages in misconduct,
prison authorities may also take away all or part of any good conduct time earned by
the prisoner.


 It is also possible that the length of time for which the defendant will be
imprisoned might be reduced by the award of parole.


 Under the law applicable in this case, if the defendant is sentenced to a term
of imprisonment, he will not become eligible for parole until the actual time served
equals one-half of the sentence imposed or 30 years, whichever is less, without
consideration of any good conduct time he may earn. Eligibility for parole does not
guarantee that parole will be granted. 


 It cannot be accurately predicted how the parole law and good conduct time
might be applied to this defendant if he is sentenced to a term of imprisonment,
because the application of these laws will depend on decisions made by prison and
parole authorities. 


 You may consider the existence of the parole law and good conduct time. 
However, you are not to consider the extent to which good conduct time may be
awarded to or forfeited by this particular defendant. You are not to consider the
manner in which the parole law may be applied to this particular defendant. 


The Legislature has mandated that a jury be instructed regarding the existence of good conduct time,
parole, and eligibility for parole dates. Tex.Code Crim.Proc.Ann. art. 37.07, § 4(a) and (b)(Vernon
Supp. 2003). The Court of Criminal Appeals has determined that a trial court does not err by
including this legislatively mandated instruction in its charge, even when the statute is inapplicable
to the defendant. Luquis v. State, 72 S.W.3d 355, 357 (Tex.Crim.App. 2002). Consequently, we
overrule Point of Error Three.

CONSTITUTIONALITY OF Tex.Code Crim.Proc.Ann. art. 37.07, § 4(a)


 In Point of Error Four, Appellant argues that if the trial court did not err in its instruction, 
then Tex.Code Crim.Proc.Ann. art. 37.07 § 4(a) is unconstitutional as applied to him. We
disagree. This question was also addressed in Luquis, with the court concluding that the statutory
instruction is not unconstitutional even when applied to an ineligible defendant. Luquis, 72 S.W.3d
at 365. We overrule Point of Error Four. Having overruled all issues presented, we affirm the
judgment of the trial court below.



October 2, 2003 

 ANN CRAWFORD McCLURE, Justice


Before Panel No. 2

Barajas, C.J., McClure, and Chew, JJ.


(Do Not Publish)