

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-08-145-CR

ERIC JENNINGS A/K/A                                                APPELLANT
ERIC JEMNNINGS

V.

THE STATE OF TEXAS                                                      STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

A jury found appellant Eric Jennings a/k/a Eric Jemnnings guilty of aggravated sexual assault of a child (Count I) and indecency with a child—sexual contact (Count II). The jury assessed his punishment at thirty years' confinement for Count I and fifteen years' confinement for Count II, and the trial court sentenced Jennings accordingly, ordering the sentences to run

---

[1] *See* Tex. R. App. P. 47.4.

concurrently. In three points, Jennings argues that convictions on both Counts I and II violate his right to be free from double jeopardy and that the trial court erred by overruling his objections to the State's comment on his failure to testify and to the jury charge on punishment. We will affirm.

## II. FACTUAL BACKGROUND

Jennings lived with his girlfriend Kandice Pierce, her two children M.R. and R.R., and their infant daughter. Early one morning, Pierce was walking past M.R.'s bedroom on her way to the kitchen when she saw a shadow in M.R.'s room. She opened the door to find Jennings standing over M.R.'s bed straightening up the covers. Pierce turned on the light in the bedroom and asked Jennings what he was doing. When Jennings turned around, his erect penis was sticking out of his boxer shorts, and he was sweating. He said, "Oh, sh**, Kandice," and began apologizing, telling her that he was sorry, that he loved them, and that he would not do anything to them. Pierce picked up M.R. and took her to the master bedroom, where she asked M.R. if Jennings had touched her. M.R. told Pierce that Jennings had "touched her poo-poo" and pointed to her female sexual organ.

Pierce took M.R. to the hospital, where pediatric nurse practitioner Sandra Arthur interviewed and examined M.R. M.R. told Arthur that Jennings had licked her "tu-tu," and when asked to identify on a drawing of an anatomically

2

correct girl where he had licked her, M.R. pointed to the female sexual organ. M.R. also told Arthur that Jennings had put his finger on her "tu-tu" and that it hurt. Arthur's physical examination of M.R. did not reveal any evidence of sexual abuse. During the examination, Arthur collected swabs of DNA from M.R.'s vulvar region and inner thighs.

The following day, child forensic interviewer Lindsey Dula interviewed M.R. M.R. told her that Jennings had licked and kissed her "tu-tu." Jennings voluntarily gave Dula a saliva sample. Forensic testing of the DNA on the swab from M.R.'s inner thigh matched Jennings's DNA.

### III. DOUBLE JEOPARDY

In his first point, Jennings argues that he was improperly convicted of both the greater offense of aggravated sexual assault of a child and the lesser included offense of indecency with a child—sexual contact in violation of double jeopardy.

The indictment charged that Jennings intentionally or knowingly caused the sexual organ of M.R., a child younger than fourteen years of age, to contact Jennings's mouth. The indictment also charged that Jennings intentionally and knowingly engaged in sexual contact with M.R., a child younger than seventeen years of age, by touching her female sexual organ with the intent to arouse or gratify his sexual desire. At the end of the guilt-innocence stage of trial,

3

Jennings asked the trial court to require the State to elect the offense upon which it intended to seek a conviction. The trial court denied his request.

The Double Jeopardy Clause of the United States Constitution provides that no person shall be subjected to twice having life or limb in jeopardy for the same offense. U.S. Const. amend. V. Generally, this clause protects against (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977); *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006). When a defendant is subjected to a single trial, only the last aspect of the protection against multiple punishments is involved. *Ex parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990). In order to prevail on a double jeopardy claim, the evidence must show that the two offenses at issue necessarily arose from "one act which could be subject to two different interpretations." *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998).

A person who commits more than one sexual assault against the same complainant may be convicted and punished for each separate act, even if the acts were committed in close temporal proximity. *Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). The statutes do not, however, authorize

4

"'stop-action' prosecutions." *Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004). That is, a defendant cannot be convicted for a completed act of sexual assault and also for conduct that is demonstrably part of the commission of the completed act. *Id.* However, even when two acts are committed in close temporal proximity, the acts still may be separate and distinct acts for double jeopardy purposes. *Bottenfield v. State*, 77 S.W.3d 349, 358 (Tex. App.—Fort Worth 2002, pet. ref'd), *cert. denied*, 539 U.S. 916 (2003); *Hutchins v. State*, 992 S.W.2d 629, 633 (Tex. App.—Austin 1999, pet. ref'd). Thus, depending on the facts of the case, indecency with a child may or may not constitute a lesser included offense of aggravated sexual assault. *See Ochoa*, 982 S.W.2d at 907–08; *Beltran v. State*, 30 S.W.3d 532, 534 (Tex. App.—San Antonio 2000, no pet.).

Jennings relies on *Ochoa* for the proposition that his convictions for aggravated sexual assault and indecency with a child—sexual contact were based on the same act and, thus, violated double jeopardy. *See* 982 S.W.2d at 906. Like Jennings, Ochoa was indicted for and found guilty of both indecency with a child and aggravated sexual assault. *Id.* at 905. Both offenses were alleged to have occurred on the same date. *Id.* The court of criminal appeals held that because the evidence, which consisted of the child's statement that Ochoa "'put his thing in my butt,'" referred to only one incident,

5

Ochoa had committed only one offense. *Id.* at 907–08. According to the court, Ochoa "committed one act, which could be subject to two different interpretations," but the jury could not convict him of both. *Id.* at 908.

Unlike *Ochoa*, the present case is not a situation in which Jennings only "committed one act which could be subject to two different interpretations." *Id.* at 908. The evidence at trial demonstrated that Jennings had touched and rubbed M.R.'s female sexual organ with his finger and that he had licked her female sexual organ with his tongue. M.R. testified at trial that Jennings had rubbed her "private part" and demonstrated the rubbing action with her hand. She also testified that he had licked her "private part" and demonstrated the licking action on her arm. Arthur testified that M.R. had told her that Jennings had put his finger on her "tu-tu" and that he had licked her "tu-tu," and Dula testified that M.R. told her that Jennings had licked and kissed her "tu-tu."

Although the two acts were committed in close temporal proximity, Jennings's touching and rubbing of M.R.'s female sexual organ with his finger was a separate and distinct act from his licking her female sexual organ with his tongue.[2] *See, e.g., Bottenfield*, 77 S.W.3d at 358 (holding that touching

---

[2] Jennings also relies on the Austin court's opinion in *Patterson v. State* to support his argument, but the facts there are distinguishable from the acts committed by Jennings. *See* 96 S.W.3d 427, 432 (Tex. App.—Austin 2002), *aff'd*, 152 S.W.3d at 92 (Tex. Crim. App. 2004), *overruled on other grounds*

victim's genitals with finger was separate and distinct from contacting her sexual organ with penis, even when committed during the same occurrence); *Murray v. State*, 24 S.W.3d 881, 889 (Tex. App.—Waco 2000, pet. ref'd) (holding that defendant "committed two separate acts—penetrating the victim's sexual organ with his finger and touching her genitals with his tongue"); *Hutchins*, 992 S.W.2d at 633 (upholding convictions for aggravated sexual assault and indecency with a child by contact because acts, although close in time, were separate); *Wingrove v. State*, No. 2-05-00135-CR, 2006 WL 2507433, at *3 (Tex. App.—Fort Worth Aug. 31, 2006, pet. ref'd) (not designated for publication) (holding evidence that defendant "'touched [victim's] privates'" with his hand supported indecency with a child conviction and evidence that defendant "'touched [victim's] privates'" with his tongue supported separate aggravated sexual assault conviction). Consequently, indecency with a child was not a lesser included offense of aggravated sexual assault based on the facts of this case. *See Ochoa*, 982 S.W.2d at 907–08. Thus, the State was entitled to seek convictions for both, and Jennings's

---

by *Sledge v. State*, 262 S.W.3d 492, 496 (Tex. App.—Austin 2008, pet. ref'd). In *Patterson*, the indecency conviction was based on the same conduct for which the defendant was also convicted of aggravated sexual assault. *Id.* at 432. As we have explained, that is not the case here. Jennings committed two separate acts.

double jeopardy rights were not violated by his punishment for both offenses. *See id.* We overrule Jennings's first point.

## IV. COMMENT ON JENNINGS'S FAILURE TO TESTIFY

In his second point, Jennings argues that during closing argument at the punishment stage of trial, the State commented on his failure to testify and that the trial court erred by overruling his objection to this comment. Jennings claims that the prosecutor's comment violated his state and federal constitutional rights against self-incrimination and article 38.08 of the code of criminal procedure. *See* U.S. Const. amend V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005).

The defense called five witnesses at the punishment stage of trial. During cross-examination of each defense witness, the State asked whether Jennings had taken any responsibility for his actions, whether he had shown any remorse, or whether he had expressed that he felt bad about the incident. Each witness testified that he had not. During the State's closing argument, the prosecutor stated,

> Every single defense witness who came up here testified that he's a good person. You know what? Maybe he is. And you know what? All of those five individuals asked you for a second chance.
> But that defendant never asked those five individuals for a second chance. He never said he was sorry for what he did, and he's never shown an ounce of remorse.

8

Defense counsel objected that this argument was a comment on Jennings's failure to testify, and the trial court overruled his objection.

A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. *Montoya v. State*, 744 S.W.2d 15, 34 (Tex. Crim. App. 1987) (op. on reh'g), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Smith v. State*, 65 S.W.3d 332, 339 (Tex. App.—Waco 2001, no pet.). In addition, the Texas Code of Criminal Procedure provides that a defendant's failure to testify on his own behalf may not be held against him and that counsel may not allude to the defendant's failure to testify. Tex. Code Crim. Proc. Ann. art. 38.08.

To violate the right against self-incrimination or article 38.08, we must decide whether the language used was manifestly intended or was of such a character that the jury naturally and necessarily would have considered it to be a comment on the defendant's failure to testify. *See Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); *Fuentes v. State*, 991 S.W.2d 267, 275 (Tex. Crim. App.), *cert. denied*, 528 U.S. 1026 (1999). The offending language must be viewed from the jury's standpoint, and the implication that the comment referred to the accused's failure to testify must be clear. *Bustamante*, 48 S.W.3d at 765; *Swallow v. State*, 829 S.W.2d 223, 225 (Tex.

9

Crim. App. 1992). A mere indirect or implied allusion to the defendant's failure to testify does not violate the accused's right to remain silent. *Wead v. State*, 129 S.W.3d 126, 130 (Tex. Crim. App. 2004); *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex. Crim. App. 1995), *cert. denied*, 517 U.S. 1106 (1996).

A statement referencing evidence that can come only from the defendant is a direct comment on the defendant's failure to testify. *Goff v. State*, 931 S.W.2d 537, 548 (Tex. Crim. App. 1996), *cert. denied*, 520 U.S. 1171 (1997); *Madden v. State*, 799 S.W.2d 683, 700 (Tex. Crim. App. 1990), *cert. denied*, 499 U.S. 954 (1991). Direct testimony as to contrition or remorse can come only from the accused, and when offered by witnesses other than the accused himself, the testimony is inadmissible. *Swallow*, 829 S.W.2d at 225 (citing *Thomas v. State*, 638 S.W.2d 481, 484 (Tex. Crim. App. 1982)).

Reference to a defendant's failure to express remorse *himself* during the trial is a comment on the defendant's failure to testify. *Cooper v. State*, 959 S.W.2d 682, 686 (Tex. App.—Austin 1997, pet. ref'd) (citing *Swallow*, 829 S.W.2d at 226). On the other hand, reference to the defendant's failure to introduce evidence of remorse *through other witnesses* may be erroneous for other reasons but does not constitute a comment on the defendant's failure to testify. *Id.* (citing *Swallow*, 829 S.W.2d at 227 n.2, which cites *Thomas*, 638 S.W.2d at 485); *see Caldwell v. State*, 818 S.W.2d 790, 800 (Tex. Crim. App.

10

1991), *cert. denied.*, 503 U.S. 990 (1992), *overruled on other grounds by Castillo v. State*, 913 S.W.2d 529, 533 (Tex. Crim. App. 1995) (noting that evidence of lack of remorse may come from other sources besides the accused and reference to that evidence would not constitute a comment on defendant's failure to testify).

Jennings relies in part on *Swallow* to support his contention that the complained-of statement during the State's closing argument constituted an impermissible comment on his failure to testify. *See Swallow*, 829 S.W.2d at 225–26. In *Swallow*, the State argued in its closing argument that a defendant who expresses remorse and admits guilt is worthy of the average DWI punishment. 829 S.W.2d at 225. The court of criminal appeals held that this remark was an impermissible comment on the defendant's failure to testify. *Id.* at 226. But the court distinguished the comment from the prosecutor's comment in *Thomas. Id.* at 227 n.2. In *Thomas,* the State argued that the jury "'didn't hear one single solitary bit of contrition on the part of this defendant from his witnesses nor his attorney.'" 638 S.W.2d at 482. The court of criminal appeals held that the argument was not a direct reference to the defendant's failure to testify but rather a comment that called attention to the lack of testimony from the defense witnesses and the defendant's

11

attorney. *Id.* at 485 ("[The prosecutor's] language literally indicted others than appellant individually and personally.").

Here, when taken in a vacuum, the State's comment that Jennings never expressed remorse might be construed as a comment on his failure to testify. *See Cooper*, 959 S.W.2d at 686. But we do not view the statement in a vacuum; instead, when taken in context with the State's entire argument and in light of the State's questioning all five defense witnesses about whether Jennings expressed any remorse to them, the State's comment was more like that in *Thomas* rather than that in *Swallow*. *Compare Thomas*, 638 S.W.2d at 484–85, *with Swallow*, 829 S.W.2d at 225, 227 n.2. The complained-of comment did not "naturally and necessarily" refer to Jennings's failure to testify; rather, the comment was equally likely a direct reference to testimony from Jennings's defense witnesses—testimony that Jennings did not express any remorse to them. *Caldwell*, 818 S.W.2d at 800; *see Thomas*, 638 S.W.2d at 485; *Cooper*, 959 S.W.2d at 686; *see also Chimney v. State*, 6 S.W.3d 681, 703 (Tex. App.—Waco 1999, pet. ref'd) (distinguishing prosecutor's comment that witnesses did not testify that defendant expressed remorse from comment that defendant himself had no remorse and holding that former was not comment on failure to testify). Although the comment might have called for inadmissible testimony, it was not necessarily a reference to Jennings's failure

12

to testify. *See Thomas*, 638 S.W.2d at 484–85; *Cooper*, 959 S.W.2d at 686. Thus, viewing the State's comment from the jury's standpoint, we hold that the comment was not manifestly intended or of such a character that the jury naturally and necessarily would have considered it to be a comment on Jennings's failure to testify. *See Bustamante*, 48 S.W.3d at 765; *Fuentes*, 991 S.W.2d at 275; *Thomas*, 638 S.W.2d at 485–86.

Alternatively, even if the trial court erred by overruling Jennings's objection to the State's comment, we conclude that any error was harmless. *See* Tex. R. App. P. 44.2(a); *see Wimbrey v. State*, 106 S.W.3d 190, 192 (Tex. App.—Fort Worth 2003, pet. ref'd). Under Texas Rule of Appellate Procedure 44.2(a), upon determining constitutional error exists, we should reverse unless we determine beyond a reasonable doubt that the error did not contribute to the defendants conviction or punishment. *See* Tex. R. App. P. 44.2(a). Our primary inquiry is what effect the error had, or reasonably may have had, on the jury's decision. *Wimbrey*, 106 S.W.3d at 192. "We consider the source and nature of the error, the extent that it was emphasized by the State, its probable collateral implications, the weight a juror would probably place on the error, and whether declaring it harmless would likely encourage the State to repeat it with impunity." *Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989).

As we explained above, the complained-of comment was, at most, an indirect comment on Jennings's failure to testify, and a review of the State's entire argument reveals that the comment referred to testimony elicited from Jennings's five defense witnesses that Jennings had not expressed remorse to them. *See Harris*, 790 S.W.2d at 587; *Cooper*, 959 S.W.2d at 686. Our neutral, impartial review of the record further demonstrates that the comment was a small part of the State's argument and was not emphasized or mentioned again and that a juror would probably not attribute much, if any, weight to the error. *See Harris*, 790 S.W.2d at 587. Although the trial court overruled Jennings's objection, the court read its charge on punishment to the jury prior to closing arguments. The charge included an instruction not to consider Jennings's failure to testify, and the jury is presumed to follow these instructions. *See Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998).

After carefully reviewing the record and performing the harm analysis required under rule 44.2(a), we alternatively hold that if the trial court erred by overruling Jennings's objection to the comment at issue then beyond a reasonable doubt such error did not contribute to Jennings's conviction or punishment. *See* Tex. R. App. P. 44.2(a). We overrule Jennings's second point.

14

## V. JURY CHARGE ON PUNISHMENT

In his third point, Jennings argues that the trial court erred by overruling his objection to the portion of the jury charge on punishment concerning the possibility that he could receive good conduct time while in prison.[3] Jennings acknowledges that this instruction tracked article 37.07, section 4(b) of the Texas Code of Criminal Procedure, but he argues that the instruction is erroneous and unconstitutional as applied to him because he was ineligible to receive good conduct time credit. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4 (Vernon Supp. 2008) (requiring jury instruction during the punishment phase to inform jury of existence and mechanics of parole law and good conduct time). Jennings also acknowledges that the court of criminal appeals has directly addressed this issue and found no violation of due process. *See*

---

[3] Specifically, Jennings complains of the following instruction: "Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time." Defense counsel objected, "This is a 3G offense, Your Honor, and good conduct time is not allowed. And so [Jennings] can't earn good conduct time, and yet the Court is telling him that he can. We would object to that as being a violation of due process and equal protection . . . ." *See* Tex. Gov't Code § 508.145(d) (Vernon Supp. 2008) (prohibiting release on mandatory supervision if inmate is convicted of those offenses listed in art. 42.12, § 3g(a)(1), which are the same offenses for which the section 4(a) jury instruction is required); Tex. Code. Crim. Proc. Ann. art 42.12, § 3(g) (Vernon Supp. 2008) (listing aggravated sexual assault and indecency with a child).

15

*Luquis v. State*, 72 S.W.3d 355, 363–64 (Tex. Crim. App. 2002). He contends, however, that he brings his complaint "to preserve the issue for review."

In *Luquis*, the court of criminal appeals acknowledged that the instruction dictated by the code of criminal procedure may appear to be misleading and inapplicable to some defendants. *Id.* at 363. Nevertheless, it construed article 37.07, section 4(b) of the code of criminal procedure to be an absolute command that the good conduct time instruction be given to the jury. *Id.* Accordingly, a trial judge who gives the instruction does not commit error. *Id.* The court also held that the required instruction as a whole is not so misleading as to deny a defendant due process. *Id.* at 368.

This court is bound by the precedent of the Texas Court of Criminal Appeals and has no authority to disregard or overrule it. *Sierra v. State*, 157 S.W.3d 52, 60 (Tex. App.—Fort Worth 2004), *aff'd*, 218 S.W.3d 85 (Tex. Crim. App. 2007). Accordingly, following *Luquis*, we hold that the trial court did not err by overruling Jennings's objection to that portion of jury charge on punishment regarding good conduct time. *See Luquis*, 72 S.W.3d at 363, 368; *see also Sanders v. State*, 255 S.W.3d 754, 765–66 (Tex. App.—Fort Worth 2008, pet. ref'd) (following *Luquis* and noting that in *Cagle v. State*, 23 S.W.3d 590, 594 (Tex. App.—Fort Worth 2000, pet. ref'd), our court also determined

16

that a jury charge like the one here does not violate a defendant's due process rights).  We overrule Jennings's third point.

## VI.  CONCLUSION

Having overruled Jennings's three points, we affirm the trial court's judgment.

SUE WALKER<br>
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 4, 2009