Opinion issued June 7, 2012.






 
 


    


In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00453-CR
____________

EMANUELL GLENN RANDOLPH, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 268th District Court of
Fort Bend County, Texas
Trial Court Cause No. 46241



 
MEMORANDUM OPINION ON REMAND FROM 
THE TEXAS COURT OF CRIMINAL APPEALS

          A jury convicted appellant, Emanuell Randolph, of aggravated robbery and
assessed punishment at nine years’ confinement. This Court reversed and remanded
for a new punishment hearing, holding that the State impermissibly commented on
appellant’s failure to testify at the punishment hearing. See Randolph v. State, No.
01-08-00453-CR, 2009 WL 4436333 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009),
rev’d, 353 S.W.3d 887 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals
reversed, holding that a prosecutor’s punishment-stage argument on the defendant’s
failure to accept responsibility is permitted if the defendant, in his guilt-stage
testimony, denies any criminal responsibility. 353 S.W.3d at 893–94. The court then
remanded the case to this Court to address appellant’s remaining points of error. Id.
at 896.
FACTS
          When Jose Ventura arrived at his home in Fort Bend County, Texas, on
February 10, 2007, he and his seven-year-old son got out of the car and started toward
the house. Ventura was then confronted by a gunman who demanded money from
him while pointing a gun at his face. The man was tall, slender, black, and was
wearing a dark-colored hooded jacked, dark pants, and a bandana over the lower part
of his face. When Ventura stated that he did not have a wallet, the gunman fled,
passing Cynthia Ventura, the wife of Jose Ventura, who was still in the car with her
twelve-year-old daughter. The Venturas then called the police, giving them the
description of the gunman. Approximately 45 minutes later, police saw appellant,
who matched the description of the robber, standing at a Burger King restaurant
inside a Shell gas station near the Venturas’ home. The police detained appellant,
then brought him to a well-lit area near the Ventura home. Cynthia and Jose Ventura
each separately identified appellant as the gunman. During trial, Cynthia and Jose
Ventura both again identified appellant as the gunman.
          Deputy Keith Pikett of the Fort Bend County Sheriff’s Office, an expert in the
field of bloodhound scent discrimination, testified that he was called to the scene of
the crime that evening to attempt to have two of his dogs run a scent trail in the
neighborhood. Each bloodhound, separately, tracked appellant’s scent from the
Venturas’ driveway to the Shell station, where appellant had been arrested. The only
dog allowed to go in the Shell station became highly excited when she approached
an ATM inside the station.
          Officer Bill Nix testified that he, along with the manager of the Shell
station/Burger King, viewed the surveillance videotape from the store for the night
of February 10, 2007. The jury was shown the videotape, which showed appellant
entering the store, using an ATM, buying food, and being arrested by the police
officer. Overruling appellant’s motion, the court refused to show the jury additional
video footage that showed there was another person at the gas station wearing a
hooded jacket, and that appellant had not entered the station prior to his entrance that
was shown on the admitted video. Instead, the trial court allowed appellant to elicit
Officer B. Nix’s testimony to establish those points, which appellant did.
          Appellant then attempted to introduce the testimony of Rudy Vargas, a private
investigator, about evidence that there had been reports of similar incidents within a
few miles of the Venturas’ home—one prior to the charged incident and another
following appellant’s arrest. Neither had been investigated by the Meadows Place
Police Department to determine whether they were connected, and appellant was not
permitted to present the testimony to the jury.
          Appellant testified during the guilt-innocence stage of trial that he was not the
perpetrator of the crime, and that he had walked to the Shell station from his home
shortly before his arrest. He presented several family members’ testimony to
corroborate his account, although none of their testimony was consistent regarding
the time that appellant left his home.
          The jury convicted appellant at the end of the guilt-innocence stage of trial.
During the punishment stage, appellant argued that the trial court should instruct the
jury in writing that they were not to consider his silence at the punishment hearing.
The trial court refused to give the instruction in writing, but instead verbally
instructed the jury not to consider the silence of appellant in their deliberations. The
trial court had previously included the written instruction in the jury charge during
the guilt-innocence stage of trial.
          Appellant also objected to the inclusion of language required by Article 37.07
of the Code of Criminal Procedure regarding the prospect that a person sentenced to
a term of confinement can “earn time off his sentence through the award of good
conduct time,” on the grounds that a person convicted of aggravated robbery with a
deadly weapon is not eligible for mandatory supervision to require his release, nor
may his good conduct time be included in determining his parole eligibility date. The
trial court overruled his objection.
          The jury assessed appellant’s punishment at 9 years’ confinement.
 ANALYSIS
1. Exclusion of Additional Surveillance Video Footage
          In his first point of error, appellant contends that the trial court erred in
refusing to show the jury additional surveillance footage from the scene of appellant’s
arrest. Appellant claims that the footage shows a different person who matched the
description of the gunman and who was dressed similarly to appellant. Further,
appellant argues that the footage should have been admitted to demonstrate that,
consistent with the defense’s theory, appellant did not enter the store prior to his
appearance in the video that was shown.
          First Argument not Preserved for Review
          With regard to the first point of error, appellant first argues that the footage
should be admitted because it displayed another person at the Shell station who
matched appellant’s description on the night of the crime. However, appellant made
no such argument at trial. Because appellant’s argument at trial does not comport
with his claim on appeal, he has waived error with respect to this portion of his claim.
See Tex. R. App. P. 33.1. Further, the evidence would have been cumulative because
Officer Nix testified that there was another person in the gas station that night who
also matched the description of the perpetrator.
          Exclusion of the Additional Video Footage Caused No Harm
          Appellant also contends that the footage should nevertheless be admitted under 
Texas Rule of Evidence 107 for optional completeness in order to compliment what
was shown by the State. Appellant attempted to establish, by showing the additional
footage, that he did not set foot on the property from the time of robbery until he
appeared on the admitted portion of the video, and that he entered the gas station from
the southern entrance nearest his home. 
          Assuming, arguendo, the trial court erred in excluding the evidence, we shall
conduct a harm analysis under Texas Rule of Appellate Procedure 44.2(b). The Court
of Criminal Appeals held that, in such an analysis, “an appellate court need only
determine whether or not the error affected a substantial right of the defendant. To
make this determination, appellate courts must decide whether the error had a
substantial or injurious effect on the jury verdict.” Llamas v. State, 12 S.W.3d 469,
471 n.2 (Tex. Crim. App. 2000). Substantial rights are not affected by the erroneous
exclusion of evidence if, after examining the record as a whole, we have a fair
assurance that the error did not influence the jury, or had only a slight effect. See
Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). 
          Here, appellant suffered no harm because his objectives were accomplished
through his cross-examination of Officer Nix. Officer Nix testified to and confirmed
both that appellant did not enter the gas station at any other time during the night and
the appellant entered from the direction of his house. Officer Nix also testified that
there was another black male wearing a hooded jacket in the gas station that night. 
          Accordingly, we overrule appellant’s first point of error.
2. Exclusion of Testimony of Similar Incidents in Nearby Areas
          In his second point of error, appellant argues that the trial court should not have
refused to admit the testimony that in nearby areas, similar incidents had occurred and
were not investigated by police. 
          Applicable Law
          A trial court’s decision to admit or exclude evidence is reviewed under an
abuse of discretion standard. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997); Kelly v. State, 824 S.W.2d 568, 573–74 (Tex. Crim. App. 1992). The trial
court has broad discretion in determining the admissibility of evidence, and its ruling
to admit or exclude evidence will be overturned only if it is so clearly wrong that the
ruling lies outside the zone of reasonable disagreement. See Montgomery v. State, 810
S.W.2d 372, 391 (Tex. Crim. App. 1990).
          Further, the Court of Criminal Appeals held that “evidence of offenses
committed by parties other than the accused is inadmissible”; this is especially true
when the proffered evidence is not inconsistent with appellant’s guilt. Ferrell v. State,
429 S.W.2d 901, 903 (Tex. Crim. App. 1968) (proof of similar robbery committed
while appellant was in jail by robbers using the same type of disguise, weapon and
modus operandi ruled to be irrelevant); Florio v. State, 532 S.W.2d 614, 618–19
(Tex. Crim. App. 1976) (evidence that 19 days prior to the offense, someone other
than the appellant attempted to gain entrance to an apartment in the same manner in
which appellant was charged with entering prosecutrix’s apartment was properly
excluded by the trial court). 
          In Brem v. State, the court held that the trial court did not err in denying the
defendant’s request to require prosecutors to investigate evidence regarding similar
incidents that happened after the defendant’s incarceration. 571 S.W.2d 314, 321
(Tex. Crim. App. 1978). The court stated that even if appellant had evidence that
crimes similar to the one for which he was on trial had been committed after he was
in custody, this would not be inconsistent with his guilt of the offense, in light of the
victim’s positive identification of him as her assailant and other circumstantial
evidence of his guilt. Id. at 322.
          Discussion
          In the present case, the first robbery appellant alluded to was committed by a
black male wearing an outfit similar what appellant was wearing when he was
arrested. This robbery occurred more than two weeks before appellant was
incarcerated. This is similar to the Florio case, because both appellants sought to use
occurrences of similar incidents before their incarceration to establish mistake of
identity. We similarly hold that the trial court did not err in ruling the first robbery to
be irrelevant to the case at hand. Because appellant was not incarcerated at the time,
the evidence is not inconsistent with his guilt and does not necessarily suggest that
someone other than he committed the offense. In fact, arguably, it could be
inadmissible evidence of an extraneous offense by appellant.
          Similarly, the second robbery, which occurred after appellant’s incarceration,
cannot be admitted as evidence tending to suggest appellant’s innocence. There was
no description of the perpetrator of the second robbery. And, in the present case, like
in the Brem case, there is both direct and circumstantial evidence of appellant’s guilt.
The complainants identified appellant as the perpetrator both after appellant’s arrest
and in court, and the police bloodhounds traced his scent from the gas station to the
scene of the crime. We, therefore, hold that the trial court did not err by excluding
evidence of the second robbery as irrelevant.
          We overrule appellant’s second point of error. 
3. Written Instruction to Disregard Appellant’s Silence Denied
          In his third point of error, appellant asserts that the trial court erred in not
including an instruction in writing at the punishment phase that the jury was not to
consider his silence at the punishment hearing.
Applicable Law
          The Court of Criminal Appeals has held that upon timely request, a defendant
is entitled to a “no adverse inference” instruction concerning his failure to testify in
the punishment phase of a capital murder trial, notwithstanding his waiver of his
privilege against self-incrimination in guilt/innocence stage. Beathard v. State, 767
S.W.2d 423, 432 (Tex. Crim. App. 1989). Because the trial court did not so charge
the jury in this case, it erred. See id. Thus, we must decide whether such error was
harmless.
          Usually, in an instance of charging error with timely objection, we would apply
the “some harm” test set out in Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim.
App. 1985). However, when an error implicates rights flowing from the United States
Constitution, we must apply the harmless-error rule enunciated by the Supreme Court. 
Bethard, 767 S.W.2d at 432 (citing Chapman v. California, 386 U.S. 18, 21 (1967)).
The harmless-error rule states that “before a federal constitutional error can be held
harmless, the court must be able to declare a belief that it was harmless beyond a
reasonable doubt.” Id. This is the same standard imposed by our harmless-error rule
for Constitutional error under Tex. R. App. P. 44.2(a).
Discussion
          In Beathard, the court concluded that even though the trial court erred in
refusing to give a “no-adverse inference” charge at punishment because appellant had
testified at trial, the error was harmless beyond a reasonable doubt. Id. at 432–33. 
The court reasoned that the right to a “no-adverse-inference” instruction is rooted in
a jury’s natural tendency to assume that the decision not to testify stems from a
defendant having something to hide, and that such a concern was not present because
the defendant had testified at guilt-innocence. Id. The court also noted that because
the State had presented no evidence at punishment, “appellant was not placed in a
position where the jury would expect him to counter factual assertions made by the
State.” Id. Finally, the court noted that the defendant did call six witnesses to testify
on his behalf at trial. Id. at 432–33.
          Similarly, in the present case, appellant testified during the guilt/innocence
stage regarding his family, his residence, his work history, the events of February 10,
2007, the fact that he has asthma, the fact that he had money at the time the offense
was committed, and his assertion that he did not commit the offense in this case. It
would be unlikely that the jury would infer appellant did not testify at punishment
because he had something to hide. Additionally, the State put on no evidence in the
punishment stage of trial, other than the complainant’s testimony of how the incident
affected her daily life. As in the Beathard case, the jury would not expect appellant
to counter this evidence by the State because the testimony involved only the
complainant’s own trauma. Furthermore, appellant called his sister to testify on his
behalf during the punishment stage. And finally, and perhaps most importantly, in this
case the trial court orally instructed the jury before reading the charge that it could
make “no adverse inference” from appellant’s failure to testify at the punishment
phase of the trial.
          Consistent with the decision in Beathard, we hold that the trial court’s error in
not charging the jury in writing that it could make “no adverse inference” from
appellant’s failure to testify at the punishment phase of the trial was harmless beyond
reasonable doubt.
          We overrule appellant’s third point of error.
4. Jury Instruction Regarding Good Conduct Time 
          In his final point of error, appellant contends that the “the Trial Court Erred in
instructing the jury that Appellant could ‘earn’ time off his sentence through the
award of good conduct time.” Specifically, appellant contends that the charge was
not a correct statement of the law as applied to his case because he is not eligible for
mandatory supervision to require his release, nor may his good conduct time be
included in determining his parole eligibility date.
          Consistent with the statutory language of Texas Code of Criminal Procedure
Article 37.07, Section 4, the relevant portions of the jury charge provided as follows:
Under the law applicable in this case, the defendant, if sentenced to a
term of imprisonment, may earn time off the period of incarceration
imposed through the award of good conduct time. Prison authorities
may award good conduct time to a prisoner who exhibits good behavior,
diligence in carrying out prison work assignments, and attempts at
rehabilitation. If a prisoner engages in misconduct, prison authorities
may also take away all or part of any good conduct time earned by the
prisoner. 
 
It is also possible that the length of time for which the defendant will be
imprisoned might be reduced by the award of parole. 
 
Under the law applicable in this case, if the defendant is sentenced to a
term of imprisonment, he will not become eligible for parole until the
actual time served equals one-half of the sentence imposed or 30 years,
whichever is less, without consideration of any good conduct time he
may earn. If the defendant is sentenced to a term of less than four years,
he must serve at least two years before he is eligible for parole. 
Eligibility for parole does not guarantee that parole will be granted. 
 
It cannot accurately be predicted how the parole law and good conduct
time might be applied to this defendant if he is sentenced to a term of
imprisonment, because the application of these laws will depend on
decisions made by prison and parole authorities. 
 
You may consider the existence of the parole law and good conduct
time. However, you are not to consider the extent to which good
conduct time may be awarded to or forfeited by this particular
defendant. You are not to consider the manner in which the parole law
may be applied to this particular defendant. 

          Appellant argues that, because he objected to the charge as being an incorrect
statement of law as applied to his case, the trial court erred by including the “good
conduct time” charge.
          The Court of Criminal Appeals considered and rejected this exact argument in
Luquis v. State, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002). The court noted that the
charge is legislatively mandated, and that “because the trial judge in this case
instructed the jury according to the legislative dictate expressed in article 37.07,
section 4(a), he did not commit error.” Id.  
          Following Luquis, we hold that the trial court did not err by including the
statutorily mandated “good conduct time” instruction in the charge.



          We overrule appellant’s final point of error.
CONCLUSION
          Having addressed and overruled appellant’s remaining points of error on
remand, we affirm the judgment of the trial court.
 
 
Sherry Radack
                                                                        Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Massengale.

Do not publish. Tex. R. App. P. 47.2(b).