**Opinion filed July 14, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-19-00399-CR

_____

## TRACI LEE ALANIZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 244th District Court**

**Ector County, Texas**

**Trial Court Cause No. C-19-0578-CR**

### O P I N I O N

A grand jury indicted Appellant, Traci Lee Alaniz, with the murder of her mother, Mary Lee Hensley. TEX. PENAL CODE ANN. § 19.02(b)(1), (3), (c). Appellant pleaded guilty to the indicted offense and she proceeded to trial before a jury on punishment. After considering the evidence, the jury assessed Appellant's punishment at eighty years' imprisonment in the Institutional Division of the Texas

Department of Criminal Justice. The trial court sentenced Appellant accordingly on December 11, 2019.

In a single issue, Appellant complains that the trial court erred when it submitted in its punishment charge a fundamentally defective parole law instruction that included abrogated statutory language.[1] Specifically, Appellant contends that the complained-of instruction erroneously informed the jury that her period of incarceration could be reduced by the amount of "good conduct time" awarded to her by prison authorities. Appellant asserts that a new trial should be granted because she was egregiously harmed by the trial court's error. We affirm.[2]

## I. *Factual Background*

The evidence presented during the punishment phase consisted of testimony from law enforcement, medical personnel, and members of Hensley's family.

On February 24, 2019, Matthew Chavez, who then was an officer with the Odessa Police Department, was dispatched to the home where Appellant and Hensley resided; upon his arrival he found Hensley deceased. He also noticed

---

[1]Appellant's first appointed appellate counsel submitted an *Anders* brief and filed a motion to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). After an independent review of the record, we concluded that this appeal was not particularly amenable to disposition under *Anders*. We granted appellate counsel's motion to withdraw, abated this appeal, and remanded this cause to the trial court with instructions to appoint other appellate counsel. New appellate counsel was directed to file a brief on the merits and address (1) the issue that we have discussed in this opinion and (2) any other substantive issues that appellate counsel deemed to be arguable. This appeal was reinstated after Appellant's brief on the merits was filed.

[2]Several of our sister courts of appeals have also addressed this issue, and each court has reached the same result that we do today: although it is error to include the repealed "good conduct time" language in the punishment charge, such error does not typically result in egregious harm. *See, e.g.*, *West v. State*, No. 10-20-00087-CR, 2022 WL 1105645 (Tex. App.—Waco April 13, 2022, no pet.) (mem. op., not designated for publication); *Jackson v. State*, No. 03-20-00085-CR, 2022 WL 257451 (Tex. App.—Austin Jan. 28, 2022, pet. ref'd) (mem. op., not designated for publication); *Lewis v. State*, No. 09-21-00082-CR, 2021 WL 6129129 (Tex. App.—Beaumont Dec. 29, 2021, no pet.) (mem. op., not designated for publication); *Holiness v. State*, No. 06-21-00038-CR, 2021 WL 4483519 (Tex. App.—Texarkana Oct. 1, 2021, pet. ref'd) (mem. op., not designated for publication); *Addison v. State*, No. 05-18-01263-CR, 2020 WL 4251068 (Tex. App.—Dallas July 24, 2020, no pet.) (mem. op., not designated for publication); *Guerra v. State*, No. 06-19-00239-CR, 2020 WL 3634390 (Tex. App.—Texarkana July 6, 2020, pet. ref'd) (mem. op., not designated for publication).

bruising on Hensley's face and hands. Officer Chavez interviewed Appellant at the scene. According to Officer Chavez, Appellant informed him that Hensley was her mother, that Hensley had Alzheimer's disease, and that Hensley had fallen and struck a patio table.

Ben Sawyer, a paramedic and fireman with the Odessa Fire Department, was also at the scene on the same day; he saw lacerations and bruises on Hensley's clavicle and chest. Sawyer testified that Appellant told him she was Hensley's caretaker and that she had last seen Hensley alive thirty minutes before Sawyer arrived on scene. Sawyer stated that he did not believe Appellant's version of events.

Detective Justin Caid of the Odessa Police Department testified that he observed bruising and scratching on Appellant at the scene. In a later interview with Detective Caid at the Odessa police station, Appellant claimed that she never hit Hensley. However, Appellant later admitted that she began frequently striking Hensley about her body some three months before to relieve "the tension" that Appellant was experiencing at the time. Concerning Hensley's demise, Appellant advised Detective Caid that Hensley had fallen the previous day and remained on the floor because Appellant was unable to lift her. Appellant said that she did not call 9-1-1 for twenty-four hours after Hensley fell. Eventually, Appellant admitted to Detective Caid that she held a pillow over Hensley's face and suffocated her.

Two family members testified—Mike Cowan, Hensley's brother, and Tana Pape, Appellant's sister. Cowan testified that Appellant typically did not work and could not keep a job, which he did not approve of, but that Hensley was partial to and would defend Appellant. Cowan testified that, after Hensley developed Alzheimer's disease, he spoke with Appellant about the possibility of Hensley moving to an assisted care facility. He said that Appellant isolated Hensley from the other family members and made excuses as to why they could not see her. According to Cowan, Appellant and Hensley lived on Hensley's monthly social

security allowance. Although Appellant would not have been homeless if Hensley had moved into an assisted living home, Cowan stated that because Appellant at times yelled at Hensley, he had told Appellant that she would be removed from Henley's residence if this abusive conduct persisted. Pape testified that Hensley and Appellant had a codependent relationship and that Appellant had no self-worth.

Dr. Stacey Murthy, a medical examiner with the Tarrant County Medical Examiner's Office, performed Hensley's autopsy. Dr. Murthy testified that she found numerous injuries on Hensley's face that were consistent with asphyxia or smothering, which she determined to be the cause of Hensley's death. Dr. Murthy opined that asphyxia will typically cause one's death in about five minutes. Dr. Murthy concluded that Hensley's death should be classified as a homicide.

II. *Analysis*

A. *Standard of Review – Charge Error*

Appellate review of alleged charge error is a two-step process. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012) (citing *Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994)). First, we must determine whether charge error exists. *Cortez v. State*, 469 S.W.3d 593, 598 (Tex. Crim. App. 2015) (citing *Kirsch*, 357 S.W.3d at 649). Second, if error does exist, we must then conduct a harm analysis to determine whether the error resulted in sufficient harm to require reversal. *Id.*; *Phillips v. State*, 463 S.W.3d 59, 64–65 (Tex. Crim. App. 2015); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Ybarra v. State*, 621 S.W.3d 371, 384 (Tex. App.—Eastland 2021, pet. ref'd).

Although "the jury is the exclusive judge of the facts," it is "bound to receive the law from the court and be governed thereby." TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007). The purpose of the trial court's charge is to "inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d

166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (quoting CRIM. PROC. art. 36.14). Therefore, because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). As such, when the charge is inaccurate, the trial court errs, and the error is subject to a harm analysis. *See Bell*, 635 S.W.3d at 645.

B. *Good Conduct Time and Parole Law Instruction – Article 37.07, § 4(a)*

Article 37.07 of the Texas Code of Criminal Procedure sets out the parole law instructions to be included in the trial court's punishment charge. *See* CRIM. PROC. art. 37.07, § 4(a)–(c) (West Supp. 2021). The particular parole law instruction to be submitted is determined by the degree of felony offense for which the defendant has been convicted at trial. In 2019, the Texas legislature amended Article 37.07, section 4(a) and repealed the specific language that referred to a defendant's ability to receive "good conduct time" which, under the previous version of Section 4(a) and if awarded by prison authorities, could reduce the length of a defendant's period of incarceration if that defendant was convicted of, among others, a first-degree felony offense. *See* Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 1, 2019 Tex. Gen. Laws 446 (codified at CRIM. PROC. art. 37.07, § 4(a)). The 2019 amendment to Section 4(a) applies to any defendant who is *sentenced* on or after September 1, 2019, irrespective of when the charged offense was committed. *See id.* § 2. Here, because Appellant was convicted of the first-degree felony offense of murder and her sentence was imposed after September 1, 2019, specifically on December 11, 2019, the amended parole law instruction in Section 4(a) would apply.

Appellant contends, and the State concedes, that the trial court was required to submit the revised Section 4(a) parole law instruction in its punishment charge. *See* CRIM. PROC. art. 37.07, § 4(a). The trial court failed to do so. Rather, the trial court submitted, as noted below, the prior version of Section 4(a) that included the repealed and now-removed "good conduct time" language:

> Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

The trial court must follow and only submit the language set out in the controlling statute verbatim; no deviation is permitted. *See Luquis v. State*, 72 S.W.3d 355, 363 (Tex. Crim. App. 2002); *see also* CRIM. PROC. art. 37.07, § 4(a) (noting the proper parole law instruction to be given during the punishment phase of a trial in which the jury is to assess the defendant's punishment if the indicted offense is listed in Article 42A.054(a), which includes murder). In this case, the trial court erred when it did not submit in its punishment charge the revised parole law instruction as required by Section 4(a).

C. *Harm Analysis*

Because we have determined that charge error exists, we must now conduct the appropriate harm analysis. *See Ngo*, 175 S.W.3d at 743. Here, Appellant's trial counsel failed to object to the submission of the erroneous parole law instruction in the punishment charge; therefore, we review the charge error under the *Almanza* "egregious harm" standard. *Madden v. State*, 242 S.W.3d 504, 513 (Tex. Crim. App. 2007); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). When, as in this case, the defendant or his trial counsel fails to assert an objection to the

trial court's charge, we will reverse only if the error was so egregious and created such harm that the defendant was deprived of a fair and impartial trial. *Villareal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009).

"Charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory." *Villareal*, 453 S.W.3d at 433; *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006). "Egregious harm is a 'high and difficult standard' to meet, and such a determination must be 'borne out by the trial record.'" *Villareal*, 453 S.W.3d at 433 (quoting *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013)). In our egregious harm analysis, we examine the relevant portions of the record to determine whether Appellant suffered actual, as opposed to theoretical, harm as a result of the error. *See Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). Egregious harm is only shown when the error "created such harm that [the appellant] was deprived of] 'a fair and impartial trial.'" *Almanza*, 686 S.W.2d at 171.

The Court of Criminal Appeals in *Almanza* identified the factors that a reviewing court should consider when determining if charge error resulted in egregious harm. *See id.* at 171. They are: (1) the charge itself; (2) the state of the evidence, including the contested issues and the weight of the probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Villareal*, 453 S.W.3d at 433 (citing *Almanza*, 686 S.W.2d at 171). These factors guide our harm analysis.

The first *Almanza* factor requires that we review the punishment charge in its entirety. The Court of Criminal Appeals has stated that "the over-all purpose of the [parole] instruction is to inform jurors of these concepts [of good conduct time or parole] as a general proposition, but to prohibit the jury from using its notions of [those concepts] in any calculus in assessing the appropriate punishment." *Luquis*,

72 S.W.3d at 360. Nevertheless, charge error may be ameliorated by the inclusion of other instructions in the same charge. In this case, the punishment charge informed the jury of the range of punishment for the offense of murder and further instructed the jury that, in assessing Appellant's punishment, the jury was *not* to consider (1) the extent to which "good conduct time" could be awarded to or forfeited by Appellant or (2) the manner in which the parole law could be applicable to her. Unless the record indicates to the contrary, and in the case before us it does not, we presume that the jury followed the trial court's instructions. *See Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011); *Luquis*, 72 S.W.3d at 366 (citing *Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996)); *Smith v. State*, 631 S.W.3d 484, 500 (Tex. App.—Eastland 2021, no pet.). Because we may presume that the jury, in assessing Appellant's punishment, did not consider how "good conduct time" or the parole law might affect or be applied to Appellant, and because it was unlikely the punishment charge, when considered in its entirety, would either confuse, influence, or mislead the jury in that regard, we conclude that the first *Almanza* factor does not weigh in favor of finding egregious harm. *See, e.g., Addison v. State*, No. 05-18-01263-CR, 2020 WL 4251068, at *4 (Tex. App.—Dallas July 24, 2020, no pet.) (mem. op., not designated for publication); *Guerra v. State*, No. 06-19-00239-CR, 2020 WL 3634390, at *9 (Tex. App.—Texarkana July 6, 2020, pet. ref'd) (mem. op., not designated for publication).

The second *Almanza* factor focuses on the evidence presented at trial. On appeal, Appellant does not contend that the evidence is insufficient to support her conviction. For the offense of murder, the punishment range is either imprisonment for life or for a term of not less than five years but no more than ninety-nine years. PENAL § 12.32(a) (West 2019). In this case, the State sought a life sentence. The jury recommended a sentence of eighty years' imprisonment. While it is true that Appellant's sentence is on the higher end of the punishment range for the convicted

8

offense, the punishment evidence was compelling. *See Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006). Despite pleading guilty and accepting responsibility for murdering Hensley, such an admission cannot excuse Appellant's conduct. The gravity of her actions was extreme, and the evidence presented to the jury during the punishment phase detailed the gruesomeness of the offense, namely that it took Appellant four or five minutes to smother and suffocate Hensley. Considering the entire record, the jury could have reasonably concluded that an eighty-year sentence was an appropriate punishment because of the violent manner in which Appellant murdered her ill, elderly mother, particularly when faced with the possibility that Hensley would soon no longer provide Appellant with a source of income or a home in which to live. Therefore, we conclude that the state of the evidence does not weigh in favor of finding egregious harm.

The third *Almanza* factor pertains to the arguments of trial counsel. Here, the arguments of trial counsel did not exacerbate the charge error. In fact, the record before us shows that neither Appellant's trial counsel nor the State ever mentioned or alluded to in their summations the subject of "good conduct time" or how Appellant's term of incarceration might have been affected by any award of "good conduct time" that she might have received from prison authorities. *See Luquis*, 72 S.W.3d at 367; *Atkinson v. State*, 107 S.W.3d 856, 860 (Tex. App.—Dallas 2003, no pet.). As such, this factor does not weigh in favor of finding egregious harm.

Finally, the fourth *Almanza* "catch-all" factor requires that we consider any other relevant information in the record that would assist in our determination of whether Appellant suffered egregious harm as a result of the charge error. *See Gelinas v. State*, 398 S.W.3d 703, 707 (Tex. Crim. App. 2013); *Almanza*, 686 S.W.2d at 171. The record shows that, during its punishment deliberations, the jury never inquired of or submitted any note or other form of communication to the trial court regarding "good conduct time," the parole law, or how either might apply to

or affect Appellant. *See Lopez v. State*, 314 S.W.3d 70, 73 (Tex. App.—Waco 2010, no pet.). Despite this, Appellant refers to no evidence in the record, and we have found none, that shows or suggests that the jury (1) was influenced, confused, or misled by the instructions in the punishment charge or (2) even considered or mentioned the application of "good conduct time" or the parole law during its deliberations. *See Hooper v. State*, 255 S.W.3d 262, 272–73 (Tex. App.—Waco 2008, pet. ref'd). Further, Appellant does not point to, nor have we found, other information in the record that would assist in our egregious-harm determination. Because there is no other relevant information in the record before us that shows or suggests that the jury's punishment recommendation was influenced or affected by the charge error, we conclude that the fourth *Almanza* factor does not weigh in favor of finding egregious harm.

We hold that the trial court erred when it submitted in its punishment charge the Section 4(a) instruction that included the abrogated "good conduct time" language. However, we conclude that this error did not result in a level of egregious harm such that Appellant was deprived of a fair and impartial trial. Accordingly, we overrule Appellant's sole issue on appeal.

## III. *This Court's Ruling*

We affirm the judgment of the trial court.

W. STACY TROTTER
JUSTICE

July 14, 2022

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

10